152 So. 583

## PARKER v. PROVIDENT LIFE & ACCIDENT INS. CO.

No. 32171.

May 29, 1933.

On Rehearing Jan. 2, 1934.

Thompson & Ferguson, of Leesville, and Cline, Thompson & Lawes, of Lake Charles, for appellant.

Woosley & Cavanaugh, of Leesville, for appellee.

BRUNOT, Justice.

This is a suit on an accident insurance policy and the appeal is from that part of the judgment in favor of the plaintiff and against the defendant for $100 per month, with legal interest thereon beginning December 14, 1930, for sixty consecutive months, or during the plaintiff's disability to perform any and every duty pertaining to his occupation and business, and for the further sum of $500 as attorney's fees and the costs of the suit. Plaintiff did not appeal from that part of the judgment rejecting his demand for double indemnity, and, as he has not answered the appeal, that issue has passed out of the case.

The material allegations of the petition are that on December 14, 1930, the plaintiff suffered an accidental injury to the right side of his abdomen, which produced a complete inguinal hernia that has continuously and totally incapacitated him from performing any and every duty pertaining to his occupation and business, and he seeks recovery under the provisions of sections (a) and (b) of part IV of the policy. These sections are as follows:

"Sec. (a) Or, commencing on date of the accident, for the period during which such injury alone shall wholly and continuously disable and prevent the Insured from performing any and every duty pertaining to his business or occupation, the Company will pay Accident Indemnity At The Rate Per Month Specified In Part I for a period not exceeding sixty consecutive months.

"Sec. (b) Or, if such injury shall not from date of the accident wholly disable the Insured, but shall within thirty days thereafter wholly disable him, or shall, commencing on date of the accident or immediately following total loss of time, prevent him from performing work substantially essential to the duties of his occupation, the Company will pay as indemnity for the continuous period of such disability caused thereby, Not Exceeding Six Consecutive Months, At The Rate Of One-Half Of Said Monthly Accident Indemnity."

The defendant excepted to the petition as not disclosing a cause of action. The exception was overruled and answer was filed. In its answer the defendant denies all of the allegations of fact stated supra, and on the trial proved by a preponderance of the evidence, and by disinterested witnesses, that from the date of the alleged accident to some time in the following February, when the mill closed down, the plaintiff continuously performed the duties his vocation and business required of him, and drew his salary regularly, without diminution thereof, for about two months. The fact is, therefore, established that the plaintiff lost no time, and that no total disability, within the intendment of the policy, manifested itself during those months. It is true that the plaintiff developed a hernia that necessitated his avoidance of work requiring the lifting of heavy objects, but the plaintiff's occupation and business was that of shop foreman, and, in that capacity, it was optional with him whether he lifted or abstained from lifting such objects. Moreover, the strain which

caused the hernia, neither as to time or place, is shown with any degree of certainty. Plaintiff says that he felt the pain in his left side on December 14, 1930, while assisting, by the use of a lever, in lifting a heavy object, but he also says that he felt the same pain on a previous occasion while loading pipe in a freight car.

It should be noted that this is a suit for the recovery of indemnity insurance, and that recovery is possible only when the case, as presented, comes within the clauses of the contract relied upon. We well understand that Parker v. Weber-King Mfg. Co., 19 La. App. 177, 139 So. 660, was decided consistently with the liberal construction the law requires the courts to give to the Employers' Liability Act (Act No. 20 of 1914, as amended), but the principles applicable to that class of cases have no application to the case before us.

■■ We have read the record carefully and find that plaintiff does not allege, neither has he offered any evidence to prove, that his hernia was caused solely by external, violent, and accidental means. All that the policy sued upon insures against is stated in part 1 thereof as follows:

"The effects resulting directly and exclusively of all other causes, from bodily injuries sustained during the life of this policy, solely through External, Violent and Accidental Means (excluding suicide, sane or insane, or any attempt thereat)," etc.

On the facts disclosed by the record we find that from December 14, 1930, until some time in the following February, the plaintiff lost no time, was on the job assigned to him daily, and received his regular wages of $150 per month; that he has not proved with reasonable certainty the time he suffered the injury which caused the hernia for which he claims indemnity; and that he has not proven, or attempted to prove, that the hernia was caused by *violent and accidental means.*

It is the accepted rule that insurance contracts are construed against the insurer, and a liberal interpretation exempting or limiting the insurer's liability is not permitted. The rule is applicable where there is ambiguity in the contract, or where doubt of the essential facts to be established results from the state of the proof. Whether an injury results from *violent and accidental means* or from means employed in the usual and accepted manner are distinct propositions. The plaintiff was insured against the effects of the former, but not against the effects of the latter.

In the case of Riley v. Interstate Business Men's Accident Association (Iowa) 152 N. W. 617, 619, the court said:

"There is a difference between an accidental result and an accidental cause. * * * It is apparent that to entitle one to recover, under a policy like the one in question, it is not sufficient to show that the death was accidental. Death is the result of some precedent act or condition. It is traceable to some cause. It is not sufficient, to make the cause accidental, that it appear that the resulting death was unanticipated, unforeseen, and not expected as a result of the act done. It must appear that that which happened to produce the result happened through accident, in order that the proper foundation may be laid for the recovery. The policy provides recovery in the event of death, but only where

death results from bodily injuries effected solely by external, violent, and accidental means."

In Schmid v. Indiana T. Acc. Ass'n, 42 Ind. App. 483, 85 N. E. 1032, 1037, and Elsey v. Fidelity & Cas. Co. (Ind. App.) 109 N. E. 413, the rule in Indiana is stated as follows:

"If the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means," and "that, where an injury occurs as the direct result of intentional acts, it is not produced by accidental means."

The Indiana rule was followed by the federal courts in Lewis v. Iowa State Traveling Men's Ass'n (D. C.) 248 F. 602, affirmed in (C. C. A.) 257 F. 552.

In Horton v. Travelers Ins. Co., 45 Cal. App. 462, 187 P. 1070, the California Appellate Court held that: it is not enough to constitute "accidental means" that the injury is unexpected or unforeseen, but there must be something of an unexpected or unforeseen character in the means which produced the injury.

The cases cited are in accord with the text-writers, Couch, Cooley, and Joyce. See Couch on Insurance, p. 3958; Cooley's Brief on Insurance (2d Ed.), vol. VI, p. 5235; Joyce, on the Law of Insurance, vol. 5, p. 2863 et seq. Mr. Cooley says:

"A person may do certain acts, the result of which may produce unforeseen consequences, and may produce what is commonly called accidental injury; but when the means are exactly what he intended to use and used,

the means are not accidental within the meaning of the policy."

In support of his views Mr. Cooley cites, in addition to the authorities we have cited supra, the following cases: Lehman v. Great Western Accident Ass'n, 155 Iowa, 737, 133 N. W. 752, 42 L. R. A. (N. S.) 562; Maryland Casualty Co. v. Spitz, 246 F. 817, 159 C. C. A. 119, L. R. A. 1918C, 1191; Tuttle v. Pacific Mut. Life Ins. Co., 58 Mont. 121, 190 P. 993, 16 A. L. R. 601; U. S. Fidelity & Guaranty Co. v. Blum (C. C. A.) 270 F. 946, 947.

In the last-cited case the court said:

"There is a distinction between accidental death which may be an unexpected or unintentional result of a voluntary act, and death from accidental means, which must result from some unforeseen or unintended act."

To the same effect is Barnstead v. Commercial Travelers' Mut. Acc. Ass'n, 204 App. Div. 473, 198 N. Y. S. 416; Kendall v. Travelers' Protective Ass'n, 87 Or. 179, 169 P. 751; Young v. Continental Casualty Co., 128 S. C. 168, 122 S. E. 577; American Accident Company v. Reigart, 94 Ky. 547, 23 S. W. 191, 21 L. R. A. 651, 42 Am. St. Rep. 374; Feder v. Iowa State Traveling Men's Ass'n, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. St. Rep. 212; Preferred Accident Ins. Co. v. Patterson, 213 F. 595, 130 C. C. A. 175; Rock v. Travelers' Ins. Co., 172 Cal. 462, 156 P. 1029, 1030, L. R. A. 1916E, 1197; 7 A. L. R. page 1136.

In the case of Rock v. Travelers' Ins. Co., the court said:

"A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this

result. It is not enough that death or injury should be unexpected or unforeseen, but there must be some element of unexpectedness in the preceding act or occurrence which leads to the injury or death. Policies like the one before us have been before the courts in many cases, and the great weight of authority, we think, sustains the view which we have just expressed. Thus in Clidero v. Scottish Accident Ins. Co., 29 Scot. L. R. 303, Lord Adam said:

" 'The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are, to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use, and did use, and was prepared to use. The means were not accidental, but the result might be accidental.' "

We have made a diligent search and have found that the great weight of authority is in line with the authorities cited supra and with the excerpts we have quoted therefrom.

For the foregoing reasons we have reached the conclusion that the judgment appealed from should be avoided and reversed, and it is so decreed. It is further decreed that plaintiff's demands be rejected, and his suit dismissed, at his cost, in both courts.

O'NIELL, C. J., is of the opinion that the judgment appealed from is correct.

## On Rehearing.

ODOM, Justice.

Counsel for plaintiff earnestly insist that our former opinion and decree are erroneous for two reasons, first, because we held that plaintiff was not totally disabled by the hernia, and, second, because we held that the hernia was not brought on by "accidental means."

If our holding that the hernia was not caused by accidental means is correct, then the question whether plaintiff was totally or only partially disabled passes out of the case.

Plaintiff was insured against effects resulting from bodily injuries sustained *"solely through external, violent and accidental means,"* and not against the effects resulting merely from accidental injuries.

If it be true that plaintiff's present affliction is due to an accident which he sustained on December 14, 1930, as he says, it does not necessarily follow that he is entitled to recover under the terms of the policy. This is conceded by plaintiff's counsel. But they contend that the accident was due solely to accidental means. Counsel for defendant dispute this.

These are the facts relating to the injury, as told by the plaintiff himself: He is forty-six years old, and up to December 14, 1930, was sound in body. He was then and had been for eight years employed by the Weber-King Lumber Company as a master mechanic. On the date named he and a helper were straightening an axle, using a jackscrew. He

was pulling on the lever or handle of the jack-screw and says, "It was a pretty hard pull. There was a kink in the axle and I had to brace my foot against one side of the truck in order to pull it."

He was asked to state what injury he sustained and what pain he felt and he said, "Well, I felt a severe pain in my groin and turned sick and told J. T. Laird, (he being the helper) that I had hurt myself and I quit and he finished the job himself, straightened the axle."

According to his testimony and that of his physician, there developed within a short time an inguinal hernia at or near the place where he felt the pain. There is nothing further said concerning the circumstances under which the injury was sustained. We must therefore assume that plaintiff voluntarily did in a·natural way that which he intended to do; that nothing unforeseen or unexpected happened except the result—the injury. There was no slip of the feet or hands, no break or loosening of the machinery to cause a sudden jerk or jar, and nothing to increase the load which he expected to lift. He does not say that after he took hold of the lever to pull he found the load heavier than he expected or that he found it necessary to or did put forth more effort than he originally intended. He did not involuntarily or unexpectedly lose control of either his mental faculties or his muscles so as to bring about a change in the manner of doing that which he intended to do. Nothing unexpected happened except the result.

Under these circumstances we reaffirm our original holding that the injury, though ac-

cidental, did not result from "accidental means."

The overwhelming weight of authority is to the effect that, if the means which produces an injury is intentionally, voluntarily used in the usual and expected way, the resulting injury, though unexpected, unusual, or unanticipated, is not produced by "accidental means." But if in the act which *precedes* the injury there intervenes ·something unforeseen or unexpected, or if something unusual occurs which produces the injury, then it may be said that the injury resulted through "accidental means."

Or, as stated in a case note found in 45 A. L. R. 1528:

"If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means, within the meaning of an accident insurance policy. Mutual Life Insurance Company v. Dodge (1926, C. C. A. 4th) 11 F.(2d) 486.

"But if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs, which produces the injury, then the injury has resulted through accidental means."

This case note supplements those on the same subject-matter found in 7 A. L. R. 1131, 14 A. L. R. 788, 35 A. L. R. 1191, and 42 A. L. R. 243, where practically all the cases touching the subject are cited and reviewed.

Counsel for plaintiff cite the case of Brown v. Continental Casualty Company, 161 La. 229, 108 So. 464, 467, 45 A. L. R. 1521, as supporting a contrary view.

The holding in that case, under the facts there found, is not inconsistent with our holding here. Dr. Brown was accustomed to inhaling chloroform and taking chloral to relieve headache and insomnia and was found dead in bed one morning, "the evidence being that he had fallen asleep while inhaling the chloroform." He inhaled chloroform intentionally, voluntarily, expecting relief from his suffering as he had obtained on many previous occasions. He did not expect that death would be the result. His death was therefore unexpected, unforeseen—an accident. The inhaling of the chloroform was the "means" by which the accident happened. But between the moment he voluntarily or intentionally began to inhale chloroform and the moment of his death, which was an unexpected result, something unforeseen, unintentional, accidentally happened; he inhaled too much or an overdose and it was the overdose which caused his death. He intended to inhale the usual quantity in the usual way and, if he had and death had resulted, there would have been no liability under the particular provisions of the policy which insured only against injury or death through "accidental means." But the voluntary inhaling of a usual and expected dose would not have and did not cause death. On the contrary, death was caused by the inhaling of an overdose which was not expected and intentional, but unexpected, unintentional, and purely accidental. The overdose and not the usual, intended quantity being the "means," by which death resulted and the taking of the overdose being accidental, it follows that death was caused by "accidental means."

In the course of its opinion the court said:

"In the case before us, there was this element of unexpectedness, that the insured inhaled more chloroform than he expected to inhale. The means or cause of his death was not that he intentionally inhaled chloroform, which he had done many times before, but that he unintentionally inhaled too much chloroform."

The court in thus speaking was not referring to the "element of unexpectedness" in the result but to the "element of unexpectedness" in the means which brought about the result and that is the crux of the case. The court illustrated, saying:

"If a man intentionally takes a dose of medicine, but unintentionally takes poisonous medicine, and thereby kills himself, would the verdict of the coroner's jury be that the cause of death was that the man intentionally swallowed medicine, or would it be that the cause of death was that the man unintentionally swallowed poison?"

Following this illustration by the court, two cases are cited, in one of which it was found that death resulted from an overdose of medicine prescribed by a physician and in the other that death resulted from taking poison by mistake. In each of the cases it was held that death was caused by "accidental means," the theory being that there was an "element of unexpectedness" in the means which caused death.

The court in the Brown Case went on to say:

"If we should hold that the death in this instance, *which was caused by the accidental inhaling of too much chloroform*, was not a death by accidental means, merely because

the inhaling *of some of the choloroform* was not *accidental*, we would find it difficult to imagine a case of death by accidental means." (Italics ours.)

What we are asked to hold is that if an unforeseen, unexpected, unanticipated injury results from the doing of an act voluntarily and as expected, the doing of the act being the means by or through which the injury was caused, then the injury was caused by "accidental means."

We cannot so hold. On the contrary we hold that unless there is an accidental element in the act which *precedes* and causes the injury, there can be no recovery under a policy which insures only against injuries caused by "accidental means." From this it does not follow that there can be no recovery in any case where the means by which an injury results is voluntarily commenced or begun. It frequently happens that unexpected, accidental elements intervene between the beginning of a voluntary act and the injury. In such cases, if the injury is traceable to the intervening, unexpected happening, and not to the doing of the act as intended, there may be recovery. To illustrate: The plaintiff in the present case voluntarily pulled on the lever of the jackscrew; he did precisely what he intended to do in the way he intended to do it; injury resulted. He cannot recover because the injury resulted from the doing of the act just as it was intended. The pulling on the handle of the jackscrew was the means by which the injury was caused. But there was nothing accidental about the means. He pulled just as he expected to. But if while pulling on the lever his foot had unexpectedly slipped, and due to the slip

there had been an unforeseen, unanticipated increase in the strain on his body and the injury had resulted from the increased strain, he could have recovered, even though he was voluntarily pulling on the lever.

Our former decree is correct and is now reinstated and made final.

O'NIELL, C. J., dissents and hands down reasons.

ROGERS, J., dissents.

O'NIELL, Chief Justice (dissenting).

I cannot see any such difference between this case and the case of Mrs. Brown v. Continental Casualty Co., 161 La. 229, 108 So. 464, 45 A. L. R. 1521, as to reconcile the ruling in this case, that the injury was not caused by accidental means, with the ruling in Mrs. Brown's Case, that Dr. Brown's death was caused by accidental means.

If the court had found in the Brown Case, according to some standard of measure, that the doctor had inhaled a greater quantity of chloroform than he intended to inhale—e. g., that the doctor had poured out a greater number of drops of chloroform than he intended to pour out—there would be some justification for the distinction which is made in the prevailing opinion in this case. But the only sense in which the court found that Dr. Brown inhaled more chloroform than he intended to inhale was that he inhaled enough to kill him, and did not intend to inhale enough to kill him. And the only sense in which Corduke Parker pulled harder than he intended to pull on the lever of the jackscrew is that he pulled hard enough to cause a

hernia, and did not intend to pull hard enough to cause a hernia. We cannot determine by any standard of measure the difference between the strain which Parker intended to apply and the strain which he did apply to the lever of the jackscrew. In the Brown Case, we could not determine by any standard of measure the difference between the quantity of chloroform which Dr. Brown intended to inhale and the quantity which he did inhale. The only difference between the two quantities, as far as the court could determine, or deemed it necessary to determine, was that the doctor intended to inhale a quantity of chloroform *not enough to kill him*, and he did inhale *enough to kill him;* and it was the inhaling of that *difference*, whatever the difference may have been, that was the *accidental means* that caused the doctor's death. And so it is in this case. The only difference between the strain which Parker intended to apply and the strain which he did apply to the lever of the jackscrew is that the strain which he intended to apply was *not enough to rupture him*, and the strain which he did apply was *enough to rupture him;* and it was the applying of that *difference*, between the strain that Parker intended to apply and the strain which he did apply to the lever of the jackscrew, that was the *accidental means* that caused the hernia.

The leading case on this subject, as to whether there is a difference between "accidental death or injury" and "death or injury by accidental means," is United States Mutual Accident Association v. Barry, 131 U. S. 100–123, 9 S. Ct. 755, 759, 33 L. Ed. 60. In that case Dr. Barry, in company with two other physicians, going to visit a patient, de- liberately jumped off of a platform, about four feet from the ground. The two other physicians, who jumped ahead of Dr. Barry, landed safely on the ground; but Dr. Barry suffered a stricture of the *duodenum*, which caused his death nine days afterwards. In defense of the widow's suit on an accident insurance policy, the company set up the plea that, although the injury which caused Dr. Barry's death might have been an *accidental injury*, the injury itself was not caused by *accidental means*. In other words, it was contended that the *cause* of the injury was not *accidental*, because Dr. Barry jumped exactly as far as he intended to jump, *id est*, from the platform to the ground, knowing when he left the platform that he would stop when his feet reached the ground, and not sooner. The jury decided that the fatal injury was caused by accidental means; and the judgment, of the Circuit Court of the United States for the Eastern District of Wisconsin, 23 F. 712, in accordance with the verdict, was affirmed. The case came up, of course, on the defendant's objections to the judge's instructions to the jury; and among the instructions which were objected to, and which were approved, were these:

"We understand from the testimony, without question, that the deceased jumped from the platform with his eyes open, for his own convenience, in the free exercise of his choice, and not from any perilous necessity. He encountered no obstacle in jumping, and he alighted on the ground in an erect posture. * * *

"Of course it is to be presumed that he expected to reach the ground safely and without injury. Now, to simplify the question and

apply to its consideration a common-sense rule, did anything, by chance, or not as expected, happen, in the act of jumping or striking the ground, which caused an accident? This, I think, is the test by which you should be governed in determining whether the alleged injury, if any was sustained, was or was not effected through accidental means."

The only sense in which it could be said that Dr. Barry jumped further than he intended to jump was that he jumped far enough to injure himself, and did not intend to jump far enough to injure himself. He miscalculated not the distance that he intended to jump but the distance that he could safely jump; just as Dr. Brown miscalculated the quantity of chloroform that he could safely inhale; and just as Corduke Parker miscalculated the strain that he could safely apply to the lever of the jackscrew. In each instance it was the miscalculation of what could be done safely that was the *accidental means* of the injury. In Dr. Brown's case it was inhaling too much chloroform; in Dr. Barry's case it was jumping too far; and in Corduke Parker's case it was pulling too hard on the lever of a jackscrew. If the inhaling of too much chloroform was the *accidental means* which caused Dr. Brown's death, so was the jumping too far the *accidental means* which caused Dr. Barry's death, and so was the pulling too hard on the lever of the jackscrew the *accidental means* which caused Corduke Parker's hernia.

In Brown v. Continental Casualty Company, we said:

"We do not believe that the doctrine stated, making a distinction between 'accidental

death or injury' and 'death or injury by accidental means,' means that, under a policy of insurance against death or injury by accidental means, the insurance company is not liable for an accidental death or injury resulting from a voluntary act in which the insured did not intend or anticipate a fatal or injurious result. The ruling in the California case cited [Rock v. Insurance Co., 156 P. 1029, 172 Cal. 462, L. R. A. 1916E, 1196] is well qualified by the statement 'that there must have been some element of unexpectedness in the preceding act or occurrence which led to the death or injury,' to make the insurer liable. In the case before us, there was this element of unexpectedness, that the insured inhaled more chloroform than he expected to inhale. The means or cause of his death was not that he intentionally inhaled chloroform, which he had done many times before, but that he unintentionally inhaled too much chloroform."

It is said in the prevailing opinion in this case that the court is asked to hold—and declines to hold—that an injury is caused by *accidental means* "if an unforeseen, unexpected, unanticipated injury results from the doing of an act voluntarily and as expected, the doing of the act being the means by or through which the injury was caused." Of course, if an injury results from the doing of something exactly as it was intended to be done, and without any miscalculation as to the extent to which it could be safely done, the injury is not accidental, in any sense, but is intentional; and the insurance company, in such a case, is not liable. Or, if an injury results from the doing of some ordinary and customary act which could not, of itself, cause the

injury to a person in sound health, the company is not liable, because the company's liability is limited, by the terms of the policy, to "injuries caused directly, *solely, and independently of all other causes*, by accidental means." We had a case like that in Frerichs v. London & Lancashire Indemnity Company of America, 169 La. 182, 124 So. 821, where the insured, while wading knee-deep in the lake, catching soft-shell crabs with a dip net, fell against a post and bruised his head, became unconscious, and died ten days afterwards. An autopsy disclosed that death was caused not by the fall against the post but by a cerebral hemorrhage, resulting from arteriosclerosis; hence the company was not liable. And so it is in every case where injury or death results, from the exertion or otherwise, in the doing of an act in the way in which—and to the extent to which—it was intended to be done—and the doing of which by a person in sound health could not cause the injury. The insurance companies are well protected by the terms of their policies in that respect.

There is really no justice in this supposed distinction, which the members of the Association of Life Insurance Counsel are striving to impress upon the courts, between "accidental injury" and "injury by accidental means." Surely, the insurance agents do not inform prospective accident insurance policy holders that, if they are injured or killed in an accident, the company may plead successfully that the accidental injury or death was not an injury or a death by accidental means. If the insurance agents should make it a practice to so inform their "prospects," the accident insurance companies would go out of business, because no one would invest his

money in a wager as to whether a court of justice would decide, in a case of injury or death by accidental means, whether the case was really a case of injury or death by accidental means, or a case of accidental injury or death. And I believe that a vast majority of prospective policyholders, and of all men of ordinary or above ordinary intelligence, outside of the Association of Life Insurance Counsel, would be led to join in the wonder of John Byrom:

> "Strange all this difference should be
> Twixt Tweedledum and Tweedledee."