Mrs. Emma H. Brackman, designated beneficiary in two policies of life insurance issued by National Life Accident Insurance Company of Tennessee on the life of her deceased husband, Richard Brackman, brings this suit on the two policies, alleging that her husband died from sunstroke while engaged at his usual occupation, and claiming an additional amount of $250 on each policy because of the so-called double indemnity feature of the policies in which it was stipulated that the additional sum would be paid if the insured "has sustained bodily injury solely through external, violent and accidental means * * * resulting in the death of the insured * * *." She also claims the penalty provided by Act No. 310 of 1910.
The defendant company filed an exception of no cause of action contending that though death resulting from voluntary exposure to the rays of the sun may be commonly and popularly referred to as an accidental death, it is not sufficient for recovery under the double indemnity clause that death be the result of accident, but it is required also that the means which produce the result be accidental. This exception was overruled and the insurance company filed answer, admitting all of the material allegations of the petition, but denying any liability for the amount claimed. Defendant also contended in its answer that having accepted the $500 payment referred to in her petition, plaintiff is estopped to contend that she should be paid the additional amount. In other words, that the acceptance of the $500 effected a compromise.
The matter was then submitted on an agreed statement of fact reading as follows:
"The National Life and Accident Insurance Company, Inc., an insurance corporation, issued two policies of insurance, Numbers LX 14378146 and LX 17208107, in which Richard Brackman was designated the insured, and plaintiff herein, Mrs. Emma Hawkins Brackman, widow of Richard Brackman, is the designated beneficiary, the originals of which policies are annexed hereto and made a part of this stipulation as if and as though copied herein in extenso.
"On June 10, 1938, while the insured, Richard Brackman, was engaged in the usual and normal course of his employment as a carpenter for the Works Progress Administration, while in good health he suffered, a sunstroke, from which he died. On the date of the said death both of the aforementioned policies of insurance were in full force and effect.
"The National Life and Accident Insurance Company, Inc. paid the principal amount of both of the aforementioned policies, namely, the sum of Two Hundred and Fifty Dollars ($250.00) on each, at which time plaintiff executed a death claim receipt, dated June 28, 1938, in the amount of Five Hundred Dollars and Seventy-Two Cents ($500.72), the original of which is annexed hereto and made part hereof as if and as though copied in extenso."
There was judgment for plaintiff for $500, with legal interest from the date *Page 567 
of Brackman's death, and defendant has appealed, and in this court insists that the exception of no cause of action should have been sustained. The point which defendant seeks to make is that where in a policy providing for payment where death results from accidental "means", there is a distinction between the means which produce the result and the result itself; that in such case it is not sufficient to show that the death was unexpected or unforeseen but that it is also necessary that it appear that the means by which the death was caused was also unexpected or unforeseen, and that therefore where an insured has voluntarily and intentionally exposed himself to the rays of the sun, even though the ensuing sunstroke may be said to be accidental in the sense that it was unexpected or unforeseen, there was nothing unexpected or unforeseen, and therefore nothing accidental about the exposure to the sun. The distinction is a very fine one, and we are not at all certain that we, ourselves, clearly understand it, or that we could, under any given state of facts, determine with reasonable conviction just whether it is the means or the result which is accidental. But we are forced to recognize that there is a distinction because our Supreme Court has said so on at least two occasions and has based its conclusion on no less an authority than the Supreme Court of the United States. The latter court in Landress v. Phoenix Mutual Life Insurance Co.,291 U.S. 491, 54 S.Ct. 461, 462, 78 L.Ed. 934, 90 A.L.R. 1382, found itself confronted by facts which were very similar; there "the insured, while playing golf, suffered a sunstroke, from which he died." There were two policies. In each of them there was a stipulation concerning accidental "means". These stipulations were not identical but very, very similar. One read as follows: "If death should result directly and independently of all other causes from bodily injuries effected through external, violent and accidental means * * *."
The other, though slightly different, meant exactly the same. The court said: "* * * it is not enough, to establish liability under these clauses, that the death or injury was accidental in the understanding of the average man — that the result of the exposure `was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident,' see Lewis v. Ocean Accident Guarantee Corp., 224 N.Y. 18, 21, 120 N.E. 56, 57, 7 A.L.R. 1129; see, also, Aetna Life Insurance Co. v. Portland Gas Coke Co. [9 Cir.], 229 F. 552, L.R.A.1916D, 1027, for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury, though unforeseen, is effected by means which are external and accidental. The external means is stated to be the rays of the sun, to which the insured voluntarily exposed himself. Petitioner's pleadings do not suggest that there was anything in the sun's rays, the weather, or other circumstances external to the insured's own body and operating to produce the unanticipated injury, which was unknown or unforeseen by the insured."
In Parker v. Provident Life Accident Insurance Co.,178 La. 977, 152 So. 583, 587, the Supreme Court of Louisiana recognized this distinction between the means which produce the result and the result itself, and held that in order that there be a recovery under a policy stipulation in which there is protection where the death results from accidental means, it is not sufficient that the result, that is to say the death, be accidental, but that it is necessary that the means be itself accidental, in the sense that it be unexpected and unforeseen. In the Parker case the insured was operating a jackscrew, and in pulling on the lever or handle, he suffered a hernia. The policy involved in that case was one against injury by accidental means and when Parker sued on that policy, the court held that there could be no recovery because although the result was unexpected, and therefore accidental, the means which produced the result was not unexpected or accidental. The court said:
"What we are asked to hold is that if an unforeseen, unexpected, unanticipated injury results from the doing of an act voluntarily and as expected, the doing of the act being the means by or through which the injury was caused, then the injury was caused by `accidental means.'
"We cannot so hold. On the contrary we hold that unless there is an accidental element in the act which precedes and causes the injury, there can be no recovery under a policy which insures only against injuries caused by `accidental means.' From this it does not follow that there can be no recovery in any case where *Page 568 
the means by which an injury results is voluntarily commenced or begun. It frequently happens that unexpected, accidental elements intervene between the beginning of a voluntary act and the injury. In such cases, if the injury is traceable to the intervening, unexpected happening, and not to the doing of the act as intended, there may be recovery. To illustrate: The plaintiff in the present case voluntarily pulled on the lever of the jackscrew; he did precisely what he intended to do in the way he intended to do it; injury resulted. He cannot recover because the injury resulted from the doing of the act just as it was intended. The pulling on the handle of the jackscrew was the means by which the injury was caused. But there was nothing accidental about the means. He pulled just as he expected to. But if while pulling on the lever his foot had unexpectedly slipped, and due to the slip there had been an unforeseen, unanticipated increase in the strain on his body and the injury had resulted from the increased strain, he could have recovered, even though he was voluntarily pulling on the lever."
As we have said, our Supreme Court in that case placed Louisiana among those jurisdictions which recognize the distinction between accidental means and an accidental result, and that that decision is so interpreted is evident from a reading of a decision of the Supreme Court of Alabama rendered in the case of Adkins v. Metropolitan Life Insurance Co., 235 Ala. 417,179 So. 382, 385, in which that court said: "The Supreme Court of Louisiana, in the recent case of Parker v. Provident Life Accident Insurance Company, 178 La. 977, 152 So. 583, committed itself unequivocally to the proposition that distinction is to be recognized and enforced between an accidental result and a result produced by accidental means", and the Court of Appeal of Louisiana for the Second Circuit recognized that the Supreme Court of Louisiana had itself recognized the distinction when in Smith v. Metropolitan Life Insurance Co., 155 So. 789, it said: "While this case was pending before us on application for rehearing, the Supreme Court of this state in the case of Parker v. Provident Life Accident Insurance Company, 178 La. 977, 152 So. 583, and the Supreme Court of the United States in the case of Landress v. Phoenix Mutual Life Insurance Company et al. [291 U.S. 491], 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, decided March 5, 1934, clearly distinguished between death by accident and death cause by accidental means, and, regardless of our own views on the question, we are forced to follow the decisions of our state Supreme Court."
So that our Supreme Court has definitely placed itself on record as recognizing the distinction which we have discussed. If there had been no other expression from our State Supreme Court on the subject, we would be inclined to the view that it would not be our prerogative to do other than construe the Parker decision, based as it is on the Landress decision of the United States Supreme Court as requiring that we hold that there can be no recovery here on such a policy where the death is caused by sunstroke. But in Brown v. Continental Casualty Co., 161 La. 229,108 So. 464, 466, 45 A.L.R. 1521, the Louisiana Supreme Court had already considered certain other facts under which it had held that there might be recovery, and we think that those facts present a legal question rather closer to the one found here than is the question in the Parker case.
In the Brown case the insured was a physician, who had formed the peculiar habit of inhaling small and regular quantities of chloroform. On the fatal occasion, he inhaled chloroform, and though he had always theretofore done so without harmful results, on that occasion death resulted. The Supreme Court said: "We do not believe that the doctrine stated, making a distinction between `accidental death or injury' and `death or injury by accidental means,' means that, under a policy of insurance against death or injury by accidental means, the insurance company is not liable for an accidental death or injury resulting from a voluntary act in which the insured did not intend or anticipate a fatal or injurious result. The ruling in the California case [Rock v. Travelers' Ins. Co., 172 Cal. 462,156 P. 1029, L.R.A.1916E, 1196] cited is well qualified by the statement `that there must have been some element of unexpectedness in the preceding act or occurrence which led to the death or injury,' to make the insurer liable. In the case before us, there was this element of unexpectedness, that the insured inhaled more chloroform than he expected to inhale. The means or cause of his death was not that he intentionally inhaled chloroform, which he had done *Page 569 
many times before, but that he unintentionally inhaled too much chloroform. If a man intentionally take a dose of medicine, but unintentionally takes poisonous medicine, and thereby kills himself, would the verdict of the coroner's jury be that the cause of death was that the man intentionally swallowed medicine, or would it be that the cause of death was that the man unintentionally swallowed poison? In Dezell v. Fidelity Company, 176 Mo. 253, 75 S.W. 1102, it was held that death caused by an excessive dose of medicine prescribed by a physician was a death from external, violent and accidental means; and in Healey v. Mutual Accident Association of the Northwest 133 Ill. 556, 25 N.E. 52, 9 L.R.A. 371, 23 Am.St.Rep. 637, it was held that death resulting from the taking of poison by mistake was a death from external, violent and accidental means, if we should hold that the death in this instance, which was caused by the accidental inhaling of too much chloroform, was not a death by accidental means, merely because the inhaling of some of the chloroform was not accidental, we would find it difficult to imagine a case of death by accidental means. Almost every accidental death or injury is the result of some voluntary act of the person killed or injured, without intending or expecting death or injury. We agree with the district court that this second defense to the suit is not well founded."
We would find it hard to reconcile that result with the one reached in the Parker case, were it not for the fact that the court itself found no conflict, and, in the Parker case, referring to the Brown case, said: "The holding in that case, under the facts there found, is not inconsistent with our holding here."
In both cases the exposure, in the one to chloroform, and in the other to the strain of operating a jackscrew, had been intentional. There had been no intervening accident or unexpected occurrence, and nothing unanticipated about the exposure, and yet in the one the court held that the means was accidental, and in the other that it was not. But we think that the court based the distinction on the fact that in the one, the Parker case, the force exerted on the jackscrew had been no greater than had been intended, whereas in the other, the Brown case, the quantity of chloroform inhaled had been "too much", or more than Brown had intended to inhale. As a matter of strict fact, the record in the Brown case did not show that Brown had inhaled more chloroform than he had been in the habit of inhaling, as Chief Justice O'Niell, who was the organ of the court in the Brown case, showed in a dissenting opinion in the Parker case, but whether the fact found — that he had inhaled more than he intended — was or was not correct, is unimportant for our purpose now because the case serves to show that our Supreme Court holds that even where an insured intends to expose himself to some external force or agency and unexpectedly exposes himself for a longer time or to a greater extent than was intended, this over-exposure being unexpected and unanticipated, constitutes an accident and consequently is the accidental means which produces the result. We think that this distinction becomes a little less obscure when it is taken into account that the exposure is not the object which is sought to be accomplished but is only co-incidental, or, in other words, an incident to which the person who exposes himself does not give thought. To illustrate: In the jackscrew case the insured was doing what he intended to do, and that act was the principal object of his endeavors. He was operating a jackscrew. The operation of that jackscrew caused his injury, but here Brackman was engaged in doing carpentering work, his being exposed to the rays of the sun was merely an unfortunate coincidence. It was not his object to expose himself. He probably gave no thought to whether he intended to expose himself or not. Therefore when he exposed himself for too long a time, it seems all the more reasonable and proper to say that he over-exposed himself by accident.
Had his injury or death come as a result of a strain caused by the work which he was engaged in performing, then under the doctrine of the Parker case he could not have recovered.
There is much disagreement among the courts over the very question which is presented here. It is true that in the Landress case the Supreme Court of the United States decided it in a way contrary to the views which we entertain, but that view, that death by sunstroke under the circumstances shown here is an accidental result, not, however, caused by accidental means, seems to be the minority view in spite of the respect and weight which is properly accorded to that august tribunal. In American Jurisprudence, subject Insurance, Vol. 29, Sec. 1004, page 759, under *Page 570 
the subject "Sunstroke and Heat Prostration", appears the following: "It is held by the weight of authority that a sunstroke, suffered by one unexpectedly, is within the protection of an accident insurance policy insuring against bodily injuries sustained through external, violent, and accidental means. In accordance with this view, it has been held that death from a sunstroke suffered while the insured is engaged in his ordinary duties or occupation is a risk covered by the policy, and that it is unnecessary, in order to warrant a recovery, that the exposure to the sun should be the result of an accident. It has also been held that death from sunstroke when going into the desert in a high temperature to inspect a mine is from accidental means, within the meaning of an accident insurance policy, where the insured was not met with horses as he expected to be and was compelled to make the journey on foot, and, because of misinformation about the distance, did not take water enough to supply him for the trip actually necessary, although he had enough for the represented distance to have prevented the injury. In several cases, however, the view has been taken that a sunstroke which does not result from an unexpected exposure does not result from an accident or by accidental means."
In 15 Words and Phrases, Permanent Edition, p. 836, it is said that: "Sunstroke suffered by insured while engaged in usual occupation held injury caused through `external, violent, and accidental means' within benefit certificate. Tate v. Benefit Ass'n of Railway Employees, 186 Minn. 538, 243 N.W. 694."
We cheerfully, though rather confusedly, accept the doctrine of the Landress case and the Parker case, that there is a distinction between accidental means and an accidental result, but we feel that a recognition of that distinction does not necessarily result in the acceptance of the view that death caused by sunstroke, suffered in the usual course of an insured's occupation, is not death caused by accidental means. That there is respectable authority for the view, that even the distinction recognized in the Landress and the Parker cases is a spurious one, is evident from a reading of the dissenting opinion rendered by Mr. Justice Cardozo of the United States Supreme Court in the Landress case, for there he said:
"The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. `Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.' Halsbury L.C., in Brintons v. Turvey, L.R. (1905) A.C. 230, 233. Cf. Lewis v. Ocean Accident 
Guarantee Corp., 224 N.Y. 18, 21, 120 N.E. 56, 7 A.L.R. 1129; Innes v. Kynoch, (1919) A.C. 765, 775. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company. Mutual Life Insurance Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895. The proposed distinction will not survive the application of that test.
"When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. So courts of high authority have held. Lower v. Metropolitan Life Insurance Co., supra [111 N.J.L. 426,168 A. 592] (a case of sunstroke); Gallagher v. Fidelity Casualty Co.,163 App. Div. 556, 148 N.Y.S. 1016; Id., 221 N.Y. 664,117 N.E. 1067 (sunstroke); Jensma v. Sun Life Assurance Co. [9 Cir.],64 F.2d 457; Western Commercial Travelers' Association v. Smith [8 Cir.], 85 F. 401, 40 L.R.A. 653; Mutual Life Insurance Co. v. Dodge [4 Cir.], 11 F.2d 486, 59 A.L.R. 1290; Lewis v. Iowa State Traveling Men's Association, D.C., 248 F. 602. So the holder of this policy might reasonably assume.
"If he had thought about the subject, he might have had his impressions fortified by the ruling of the House of Lords that a workman who suffers a heat stroke has a claim for relief under the Workmen's Compensation Act, Ismay, Imrie Co. v. Williamson, supra [(1908) A.C. 437]. The British act (6 Edw. 7, c. 58 § 1) gives compensation for personal injury `by accident' arising out of and in the course of the employment. Injury by heat stroke was held to be injury `by accident.' The result would hardly have been different, certainly one insured would not have looked for any difference, if for the phrase `injury by accident' the lawmakers had substituted the *Page 571 
words injury `by means of accident,' or injury by accidental means."
We therefore feel that neither the Landress decision nor the Parker decision makes it necessary that we hold here that the means which produced the death was not accidental, and consequently reach the conclusion that the "means" which caused the death of Brackman was accidental.
Plaintiff is not entitled to the penalty provided in certain cases by Act No. 310 of 1910. Dart's La. General Statutes, Vol. 2, Sec. 4106-4111. In a footnote to Sec. 4108 of Dart's Statutes appears the following: "This section applies only to cases where indemnity is sought for illness or disability and does not apply where indemnity is sought for death. Canal-Commercial Trust 
Sav. Bank v. Employers' Liability Assur. Corp., 155 La. 720, 99 So. 542; Brown v. Continental Casualty Co., 161 La. 229,108 So. 464, 45 A.L.R. 1521; Michel v. London Lancashire Indemnity Co.,162 La. 160, 110 So. 186; Braxton v. Unity Industrial Co., 14 La.App. 435, 131 So. 629."
The acceptance by Mrs. Brackman of payment from the company of the amount it admitted to be due under the face of the policy of course cannot be pointed to as a compromise. The company paid what it admittedly owed, and therefore there was no consideration given for a compromise settlement of the balance. Cruze v. Life Insurance Company of Virginia, La.App., 184 So. 735. In fact this point is not seriously argued by counsel for defendant.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.
Affirmed.