**TOUPS v. PENN MUT. LIFE INS. CO.**
No. 575 Civil Action.

District Court, E. D. Louisiana,
New Orleans Division.
March 26, 1943.

Dufour, St. Paul & Levy, of New Orleans, La., for plaintiff.

Monroe & Lemann, of New Orleans, La., for defendant.

CAILLOUET, District Judge.

This suit was first filed in the proper State Court by a resident of Louisiana, in her admitted status of second designated beneficiary, duly substituted for the original, under the terms of a $5,000 life insurance policy, with double indemnity features, which was issued by the above named defendant insurance company to the late Roger L. Toups.

Removal to this proper Federal Court was regularly effected on motion of said insurer, which is domiciled in Philadelphia, Pennsylvania, and trial was had without a jury.

The face value of the policy had been paid and accepted, under express reservation of the beneficiary's right to press her claim for the additional sum of $5,000 at issue under the aforementioned double indemnity provisions, liability therefor being denied by the insurer.

The sole issue in this case is, therefore, liability vel non under the circumstances attending the insured's death.

The evidence was, substantially, that on May 31, 1941, at 10:30 P. M., said Toups being then a patient at Hotel Dieu hospital, in New Orleans, left his room in a hurried manner, ran out on the adjoining second-story porch or balcony overlooking the courtyard on the rear side of the main hospital building, announced, when a nurse called upon him to stop, that he was going to jump and then assumed a sitting position on the balcony baluster (which outside guard, made of brick with cement top, was about 3 feet high, and 1½ feet wide at the topmost part); although *then* in easy position to jump, did not do so, got down

from his vantage point and resumed his running course, followed by another nurse, whose forward progress he sought to bar by the placing of three obstructions, at one point, in her path; again announced his intention to jump, upon being called to stop by this second nurse; finally reached the end of the porch or balcony, when and where he, in like manner as at first, sat upon the baluster, being then very calm and giving evidence of knowing just what he intended to do; with his back facing the courtyard, let himself down gradually full length while holding onto the extreme outer ridge or ledge of the baluster top; the nurse who had been following him then clutched his left arm with her right hand, but had to let go as he dropped, his hands slipping from the cement ledge, the weight of his body *appearing to her* as "pulling him down".

From the top of the baluster to the ground level, where his fall ended on a concrete pavement, the distance was twenty-two feet.

On June 2, 1941, at 3:45 A. M., the insured died at the hospital, from hemorrhage and shock following a fracture of the skull sustained as the direct result of his having so dropped through the space that had intervened between his hanging body and the pavement—approximately 15 feet.

The pertinent double indemnity provisions of the insurance policy are that, upon due proof being received at the insurer's home office that the death of the insured "resulted solely from bodily injuries effected directly and exclusively by external, violent and accidental means" and "within ninety days after sustaining such injuries", *then,* in addition to the required life element payment of $5,000, the insurance company was obligated to further pay $5,000, as double indemnity; provided, however, that the same was not to be so payable if, as for instance, among other named possible events, the death of the insured resulted "from self-destruction at any time whether sane or insane."

■ The burden rested upon plaintiff to prove her claimed right to double indemnity recovery. Faulk v. Mutual Life Insurance Company, 1926, 160 La. 529, 107 So. 395, 401; New York Life Insurance Company v. Lucy W. Hatcher et al., 5 Cir., 1940, 115 F.2d 52.

The defendant disclaimed any intention *to ascribe suicidal intent.*

There is no doubt that the insured's death on June 2, 1941, resulted solely from bodily injuries effected directly and exclusively by external and violent means. But were said *means,* or the cause of such injuries, accidental?

■ It is not enough that the *injuries* and *death* happened by chance or without design on the part of the insured—not enough that both were unintended, unexpected or unforeseen—if he *voluntarily* did the act, i. e., purposely employed the *means,* from which the bodily injuries and death directly resulted.

■ The term "accidental event" does not have the same significance as "accidental means"; an event is the consequence, outcome, sequel or end brought about or effected by *prior* operation of the medium or contributing force or agency, referred to as the *means* or cause; there may have been *not* the *least* degree of chance or fortuity in the *means,* the act done may have been an ordinary one *purposely* done, and yet, because of an unknown or unknowable factor, an unexpected and unusual result may be the outcome of the course of action pursued and concluded—the sequel or end, i. e., the *event* brought into being as the direct result of the *means* or cause *intentionally* utilized may be *accidental.*

■ But the *event* must be caused by an act not purposely and designedly done, before it can be said that such event resulted from *accidental means*. The something unforeseen, unexpected or unusual must occur *in* the act which *precedes* the event. 1 Words and Phrases, 1940, Perm. Ed., "Accidental Means", pp. 380–406; Bates v. New York Life Insurance Co., D.C.E.D.La., 1940, 31 F.Supp. 813; Whitehead v. Railway Mail Ass'n, 5 Cir., 1920, 269 F. 25; Davis v. Jefferson Standard Life Insurance Co., 5 Cir., 1934, 73 F.2d 330; McCrary v. New York Life Insurance Co., etc., 8 Cir., 1936, 84 F.2d 790; Parker v. Provident Life & Accident Insurance Company, 1933, 178 La. 977, 152 So. 583.

■ For the purposes of this case it may be assumed that the insured had no other intention in mind than to make use of what seemed to him to be the only available way to break away from the well-meant, though irksome, care and custody to which the hospital authorities subjected him; and that such avenue of escape,

**350**

*to him,* appeared reasonably safe. But he *intentionally* resorted to the *means* which *directly* caused his fatal bodily injuries.

Plaintiff places great reliance on the case of United States Mut. Acc. Ass'n v. Barry, 1889, 131 U.S. 100, 9 S.Ct. 755, 762, 33 ·L.Ed. 60, but, as is clearly indicated therein, if the voluntary utilization of the *means* in that case (jumping from a platform four or five feet to the ground) was without unexpected or unforeseen or involuntary movement of the body *in* the act of jumping which *preceded* the accidental event or result, *then* there was present no *accidental means;* however, presence vel non was a question for the jury, said the court; its opinion, as to this phase of the case, reading as follows viz.: "3. It is further urged that there was no evidence to support the verdict, because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. ·It must be presumed, not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was whether there was anything accidental, unforeseen, involuntary, unexpected, *in the act* of jumping from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, *in a not unusual or unexpected way,* it cannot be called a result effected by accidental means; but that if, *in the act which precedes the injury,* something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means. * * *" (The present writer's emphasizing.)

### Findings of Fact.

1. The death of the insured Roger L. Toups resulted solely from bodily injuries effected *directly* and exclusively by his voluntary act of dropping a distance of approximately fifteen· feet from the second-story balcony of Hotel Dieu, overlooking the hospital courtyard, down to a ground-level concrete pavement.

2. There was no accidental element in said act of dropping which so preceded and caused the fatal bodily injuries by him sustained.

### Conclusions of Law.

1. The insured's death did not result solely from bodily injuries effected directly and exclusively by external, violent and *accidental* means and plaintiff, therefore, may not recover the double indemnity sum of $5,000 sued for.

2. For which reason, defendant is entitled to judgment dismissing plaintiff's action, with costs.

Accordingly let such a judgment be entered.