GRIFFIN v. WASHINGTON FIDELITY NATIONAL LIFE INSURANCE CO.

(December 16, 1929. Opinion and Decree.)
(January 13, 1930. Rehearing Refused.)

Chas. J. Mundy, of New Orleans, attorney for plaintiff, appellant.

L. R. Hoover, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J. Plaintiff, alleging

that she is the beneficiary named in a certain policy of life insurance for the sum of · $188.50, issued to her late husband, Alsay Griffin, by the defendant insurance company, asks judgment against it for that amount. Defendant admits the issuance of the policy and the death of plaintiff's husband, but resists payment on the ground that "the death certificate of Alsay Griffin shows that his death resulted from a venereal disease and that, under the terms of the policy, the defendant assumed no liability for sickness or death resulting from venereal disease." The policy, which is in evidence, contains a clause reading as follows:

"No benefits will be paid for sickness or death resulting wholly or in part, directly or indirectly, from any venereal disease, or for suicide, sane or insane."

The sole question for our consideration, one of fact, is whether Alsay Griffin's death was caused by a venereal disease.

Griffin died in the Charity · Hospital April 29, 1928. A certificate, certified by the secretary of the hospital and setting forth general syphilis as the primary, and anemia as the secondary cause of Griffin's death, was produced and filed in evidence on the trial of the case. Dr. B. J. De Leureal, house surgeon of the Charity Hospital, identified the certificate as having been based upon information furnished by him as a result of his treatment of the deceased. When asked to explain his diagnosis, Dr. De Leureal answered:

"In the first place, the blood test showed a positive Wassermann; that is not in itself conclusive of the disease, but that with the physical findings which consisted of a severe syphilitic heart disease and very severe anemia due to some organism, the reflex findings of the case become history of having contracted the disease."

On behalf of plaintiff, Dr. M. C. Gaines testified that he had treated Griffin for a number of years without discovering the presence of syphilis and expressed the opinion that syphilis was not the cause of his death, but Dr. Gaines admitted that Griffin suffered from anemia, a condition usually present in syphilis. Dr. Gaines made no test of any sort, and, when asked whether he was in a position to say whether or not Griffin died of syphilis, replied in the negative.

In considering this testimony the trial court reached the conclusion that the defense had been sustained by the evidence and dismissed plaintiff's case. We are of opinion that its judgment was correct, and it is, for the reasons herein assigned, affirmed.