## CARNELIOUS v. LOUISIANA INDUSTRIAL LIFE INS. CO.

——

(December 14, 1931. Opinion and Decree.)
(January 11, 1932. Rehearing Refused.)
(February 29, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

——

Normann, McMahon & Breckwoldt, of New Orleans, attorneys for plaintiff, appellee.

Puneky & Barrios and James J. Landry, of New Orleans, attorneys for defendant, appellant.

WESTERFIELD, J.   This is a suit on an industrial life and accident insurance policy.  The plaintiff, Hesikiah Carnelious, a longshoreman, suffered an accidental injury to his right leg on Februry 2, 1930. His leg was amputated on June 1, 1930. The amputation of the leg is alleged to have totally disabled plaintiff, and it is claimed that he is entitled to twenty times the amount of the weekly premium of $.25, or $5 a week, for 100 weeks; that, at the time of the filing of the suit, 35 weeks were due, totaling $175, upon which a credit of $105 was acknowledged, leaving a balance of $70, for which amount judgment is asked, plus $5 a week from September 30, 1930, the date of the filing of the suit, until the rendition of judgment, together with reservation of his right to sue for additional weekly benefits, as the same may become due.  As originally filed, a penalty of double the amount due, plus attorney's fees, was prayed for, because of the delayed payment, under the policy, in accordance with Act No. 310 of 1910.

There was judgment below in plaintiff's favor, as prayed for, with the exception of the penalties.  From this judgment defendant has appealed.  No modification of the judgment with reference to penalties is asked for by plaintiff's counsel, for the reason that, since the institution of the suit, plaintiff has died, and it is admitted that his succession representative is not entitled to claim the penalties.

Defendant admits the issuance of the policy, the injury, and amputation of plaintiff's leg, but denies that he was permanently and totally disabled within the meaning of the policy.  It avers that plaintiff was paid more than he was entitled to at the time this suit was brought.

Plaintiff relies upon the following provisions of the policy:

"If through accident the insured sustains an injury which directly and independently of all other causes, results in entire and continuous disablement of the insured within sixty days from the date of such accident and which shall wholly and permanently disable the insured from performing any and every kind of duty pertaining to his trade or occupation, then and in that event the Company will, in lieu of all other benefits, pay to the insured for a period not exceeding one hundred weeks a weekly indemnity equalling twenty times the amount of the premium payable hereunder totalling the amount stated in the schedule below."

The position of plaintiff with regard to the totality of the disability is that his occupation, that of longshoreman, was such as to preclude his further pursuit of it with only one leg; that a longshoreman needs two legs in order to carry on. Sizemore v. Kirkland Timber Co., 15 La. App. 229, 131 So. 501, 502; Jennings v. Brotherhood Accident Co., 44 Colo. 68, 96 P. 982, 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109; Taylor v. Southern States Life Ins. Co., 106 S. C. 356, 91 S. E. 326, L. R. A. 1917C, 910.  In the latter case it was held that "total disability," as used in accident policies, means "generally such disability as prevents the insured from following his usual vocation in which he was engaged when he was injured."   We conclude on this point that a longshoreman who loses one leg is totally disabled within the meaning of the policy.

But defendant says that plaintiff cannot claim under the quoted paragraph, because he has not alleged, nor proved, that the loss of the leg on June 1st was due to the accident which he suffered on February 2d, and that certainly the disability was not "immediate or continuous after the injury" and not the direct cause "independent of all other causes" of his disablement. He contends that, if anything is due plaintiff, it is due him under another clause of the policy, where ten times the amount of the premium, or $2.50 a week in this case, would be due, which clause reads as follows:

"Should such accident result in the loss of one hand above the wrist or of one foot above the ankle, then and in that event the company will consider such loss as constituting partial disability in the sense of this clause and will pay to the insured, in lieu of all other benefits under this policy, for a period not exceeding one hundred (100) weeks, a weekly indemnity equaling ten (10) times the amount of the premium payable hereunder totaling the amount stated in the schedule below."

Defendant voluntarily paid plaintiff the sum of $105, the amount which would be due plaintiff at $5 a week for the 21 weeks, which had elapsed during the period in which these premiums were paid, and thus it appears that the defendant itself at one time believed plaintiff entitled to the benefits of the provision relied on. However that may be, we will first discuss the total disability clause from the standpoint of whether plaintiff's injury was the direct and independent cause of his disability. We have already held that he was totally disabled.

Plaintiff was discharged from the Charity Hospital in the city of New Orleans on February 11, 1930, having been admitted to that institution on February 3, 1930, the day after his accident, and re-admitted on the 24th of April, 1930. His leg was removed on June 1, 1930. The argument is that, whatever was the matter with him when he entered the hospital, he was cured on February 11, 1930, and that his re-entry and the subsequent removal of his leg was due to another and a different cause, syphilis being the suspected agency; that in any event his accident was not the sole cause, as required by the policy. This defense was not raised in the answer, and it is objected that it is a special defense and should be specially pleaded. It seems to us that, since plaintiff bases his suit upon a contract of insurance, it is necessary for him to show that it comes within some provision of the policy entitling him to recover. The X-ray diagnosis of plaintiff's leg showed a comminuted fracture of the tibia, near the junction of the upper and middle thirds, also a fracture of the neck of the fibula. Plaintiff was discharged from the hospital on February 11, 1930. The reports of the hospital indicate that on February 18th, a week after his discharge, the cast was removed from his leg; that on March 31, 1930, he reported to the hospital and was instructed to return in two weeks; that he was there again on April 7th and on April 9th, and on this latter date he complained of pain at the site of the fracture. On April 17th, the cast on his leg was stripped to permit of its being dressed. He also reported at the hospital on April 16th, 21st, and 25th to have his wound dressed. On April 25th a skin infection is noted in the record. The cause of the operation, which was performed on June 1st, is stated to be the result of a "comminuted fracture of the right tibia and fibula with extensive skin infection of the leg." The plaintiff was under the care of the hospital as late as August 8, 1930. It therefore appears to us

that plaintiff's injury was continuous. During one of his visits to the hospital he was subjected to a Wasserman test, and it was reported as "strongly positive," which we understand to be accepted by the medical profession as evidence of the presence of syphilitic infection. Nothing more than the bare statement of the result of the Wasserman test appears in the record, and there is therefore nothing to indicate the extent, if any, to which this infliction contributed to the necessity for amputation. But the argument is made that, if it had anything whatever to do with the situation, no recovery can be had because the accident must be the sole and independent cause of the disability. Our understanding of the meaning of this clause, as interpreted by the courts generally, is that it suffices if the cause of injury or death be the efficient or predominant cause. The phrase "resulting directly, independently and exclusively in death," refers to the efficient, or, as some courts speak of it, the predominant cause of death at the time it occurs. Illinois Commercial Men's Ass'n v. Parks (C. C. A.) 179 F. 794.

The total loss of sight consequent upon injury to an eye, caused by running into an obstacle in the nighttime, constitutes a loss within the policy, even though a prior diseased condition of the eye is set up in defense. Travelers' Ins. Co. v. McInerney (Ky.) 119 S. W. 171.

In the case of Fetter v. Fid. & Cas. Co., 174 Mo. 256, 73 S. W. 592, 595, 61 L. R. A. 459, 97 Am. St. Rep. 560, the injury complained of was a rupture of the right kidney, the lower part of which was found to be cancerous. In disposing of the contention of the defendant that the rupture was not the sole cause of the death of the insured, the court said:

"The contention of the defendant is that the accident would not have resulted in the rupture if the cancer had not been there. * * *

"On this testimony the defendant says that the death was not the result of the accident 'independent of all other causes.'

"If we should give to those qualifying words of the policy the meaning that is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. * * *

"If, therefore, there could be discovered in a man's body, after his death, any condition, though unsuspected, that, under scientific tests, would render him more amenable to accidents, or less capable of resisting their influence, the policy would not cover the case."

In Driskell v. U. S. Health & Accident Ins. Co., 117 Mo. App. 362, 93 S. W. 880, 882, the court said:

"We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances.

"* * * If, under the peculiar * * * condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death.

"The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause.

"In such case, disease and low vitality do not rise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury."

In Fid. & Cas. Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 997, 44 L. R. A. (N. S.) 493, it was held:

"If the injury, by aggravating the disease, accelerated the death of the assured, then it resulted 'directly, independently and exclusively of all other causes.'

"In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition."

In Freeman v. Mercantile Mutual Accident Ass'n, 156 Mass. 351, 30 N. E. 1013, 1014, 17 L. R. A. 753, it was held:

"The law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient, predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect."

The case of Frerichs v. London & Lancashire Indemnity Co. of America, 169 La. 182, 124 So. 821, we consider not in point for the reason that in that case it appears that the predominant cause was not the traumatic injury but the arteriosclerosis. In the case of Kirkwood v. London & Lancashire Ind. Co. of America, 14 La. App. 438, 131 So. 703, the cause of death was an aneurism of the thoracic aorta, which may or may not have been aggravated by the fall. In this case also the efficient predominant cause of death was the disease and not the traumatic injury.

Our conclusion is that plaintiff is entitled to total disability under the clause of the policy relied on, and consequently, for the reasons assigned, the judgment appealed from is affirmed.