Plaintiff appealed from a judgment rejecting his demand for an amount alleged to be due him as "accident disability benefit" under a daily income policy issued to him by the defendant. The policy is dated August 9, 1937. It provides that for any disability or loss occurring six months subsequent to its issuance "benefits at the rate specified in the said schedule will be paid for each day (not exceeding 182 days nor less than 4 days) that the insured is by reason of bodily injuries effected solely through external, violent and accidental means of which there is external evidence, wholly and continuously from date of accident, disabled and prevented from performing each and every duty pertaining to any business or occupation." There are also stipulations designed to cover cases of insanity, sickness, disease and accidental dismemberment. Preceding these stipulations, it is stated that in consideration of the weekly premium named on the reverse side of the contract, the defendant "does hereby agree, subject to the provisions, conditions and limitations hereinafter appearing on the face and reverse side hereof and endorsed hereon, all of which are made a part hereof, to pay", etc.
The policy is written on both sides of a large sheet of white paper measuring ten and one-half (10 1/2") inches by sixteen (16") inches. On the reverse side of the sheet, inter alia, in pica type, appears the following stipulation:
"No benefits will be paid for dismemberment, disability or insanity resulting wholly or in part, directly or indirectly, from one or more of the following: venereal disease; war; riots;" etc. Defendant contends that this stipulation bars recovery under the policy, in view of the established facts. The lower court agreed with this position.
Plaintiff had been in the employ of the City of Shreveport for twenty-four years when injured on October 2, 1939. He was at that time a member of a street repair crew. He was raking trash etc. from the street's surface beside and with his back to machinery employed in the repair work, and on account of a mechanical defect in the clutch, a roller suddenly slipped from place and struck him on the calf of the right leg just below the knee joint. The lick knocked him down but the only superficial evidence of trauma was an abrasion. This was evidently due to the fact that the flat surface of the roller came in contact with the leg, and not the edge or other sharp part of it.
The accident happened about mid-afternoon. Plaintiff reported it to the foreman of his crew and on the following morning he was sent to Dr. A.P. Crain, city physician, for examination and treatment. Physical examination disclosed "an enlargement, a tumor mass in the popliteal region of the right leg, under the knee." *Page 698 
The popliteal region is described as the space or hollow at the back of the knee and thigh. Dr. Crain found no evidence of trauma. On October 9th he lanced the leg at the site of the enlargement. It was then discovered that an aneurysm was the cause of the enlargement. The lick evidently aggravated it. A blood test (Wasserman) showed 4 plus which indicates, with little doubt, that the patient was afflicted with syphilis.
An aneurysm is briefly defined as being a sac formed by the dilatation of the walls of an artery and filled with blood. Dr. Crain testified that this aneurysm bursted on slight manipulation, "which showed hard, thick and friable, and discoloration of the sac, indicating that the condition was one of long standing." He was positive in the opinion that the aneurysm was of syphilitic origin. Syphilis, it is not disputed, is a venereal disease.
Plaintiff was under the personal treatment of Dr. Crain from the date the leg was lanced until the day of trial, February 9, 1940. Following the lancing approved treatment was administered, but on account of imperfect blood circulation gangrene set up in the right foot which necessitated the amputation of that member about the center of the instep, on November 6th. This produced total, continuous disability and forced confinement to bed.
Plaintiff submits that the only question involved in the case is whether he was afflicted with syphilis when injured, and, if so, whether this malady caused directly or indirectly, his disability. His attorney argues that the medical expert testimony does not establish beyond doubt that the aneurysm was of syphilitic origin. Dr. Crain is positive that the slight lick to the calf of the leg did not produce the aneurysm; that the pathological conditions revealed from the lancing could not possibly have developed in so short a time after the original injury.
Dr. Breffeilh was present when the leg was lanced and observed the conditions of and about the aneurysm as testified to by Dr. Crain. He gave the following testimony, to-wit:
"Q. Just state what that condition indicated. (Withdraw the question). When a technician makes a blood examination and finds or reports back to you a Wasserman 4 plus, what does that indicate in the medical profession? A. As far as diagnosis we consider it as almost or the most accurate diagnostic test for syphilis.
"Q. In other words to the common layman that indicates syphilis, don't it? A. One cannot say absolutely; diagnosticians refer to it — yes, but absolutely you cannot say it is syphilis.
"Q. You would treat the patient for syphilis on that report? A. Absolutely.
"Q. Did that condition you found after the incision was made — did that indicate an old standing or fresh injury? A. It indicated apparently one of old standing.
"Q. Of long duration? A. Yes."
Aneurysm is the result of trauma or disease. According to Dr. Crain, from eighty-five (85%) per cent to ninety (90%) per cent of them are directly traceable to syphilis.
In this case the testimony warrants a finding that when injured, plaintiff was a syphilitic. That fact is established as clearly as could be expected in a case of this character. It is also as equally well established that the lick did not produce the aneurysm. This being true, and plaintiff being in other respects physically sound, the irresistible conclusion is that the aneurysm was the result of syphilis. Soon or late an operation, such as was performed, would have been imperative to secure relief. If this had not been done death would almost certainly have been hastened. In view of these fact findings, it follows that the disability which plaintiff now suffers is the result "wholly or in part, directly or indirectly" of his syphilitic condition. The accident aggravated the pre-existing condition. This necessitated a minor operation for the purpose of relieving the enlargement. Gangrene resulted from this operation which made it imperative, to prevent death, to remove part of the foot. All of these factors produced the disability. All of them, save the lick, directly or indirectly, are traceable to the existence of syphilis. The lick within itself would not have produced serious consequences. It would probably not have required medical attention. The swelling which followed the lick, under the testimony bearing thereon, arose not so much from the force of the lick, but from the fact that it fell upon that part of the leg's surface under which rested the aneurysm. Had the leg been in a healthy condition the swelling would not have attracted attention. *Page 699 
The accident which befell plaintiff was not the efficient or predominant cause of the disability which followed. It set in motion a chain of causation resulting in the disability, but this is not sufficient, under the terms of the policy, to render defendant liable. Carnelious v. Louisiana Industrial Life Insurance Company, 18 La.App. 739, 138 So. 533, and cases therein cited; Frerichs v. London Lancashire Indemnity Company of America, 169 La. 182, 124 So. 821.
Stipulations similar in character to that under discussion have been heretofore considered by the courts of this state and enforced as written. Griffin v. Washington Fidelity National Life Insurance Company, 12 La.App. 159, 125 So. 152; Coleman v. National Life Accident Insurance Company, La.App., 145 So. 298.
The case of Kirkwood v. London Lancashire Indemnity Company of America, 14 La.App. 438, 131 So. 703, is quite like the one at bar.
Lastly, plaintiff argues that there is conflict between the quoted stipulation relative to venereal disease and that in the face of the policy providing for benefits in case of disability from accident, and contends that the clause relative to venereal disease should be entirely ignored as a constituent provision of the contract. To support this position, he cites: Smith v. Washington National Insurance Company, La.App., 178 So. 691; Farmer v. Prudential Insurance Company of America, La.App., 167 So. 234; Heiman v. Pan American Life Insurance Company,183 La. 1045, 165 So. 195.
It is true that ambiguous provisions in a policy of insurance are to be construed favorably to the insured, and where there is irreconcilable conflict between stipulations, the one most favorable to the insured will be adopted as truly reflecting the intention of the parties. But here we find no ambiguity in the stipulations nor is there present any conflict. The policy must be read and construed as a whole in order that the intention of the parties be correctly found. Defendant simply agreed to make certain benefit payments to plaintiff if he should be disabled as a result of an accident, such as is described in the policy, provided such disability did not result "wholly or in part, directly or indirectly" from venereal disease. It is also true that the limitations upon defendant's liability, so far as venereal disease is concerned, appears in a stipulation on the reverse side of the sheet on which the policy is written. But this fact does not unfavorably affect defendant's rights. There are several material stipulations on the reverse side of the sheet. If one may be ignored, then by the same token, all may be likewise treated.
It is of general knowledge that in practically all contracts of insurance, essential stipulations are to a large extent incorporated therein by reference. In the policy before us it is specifically declared, in substance, that defendant's agreement and the measure of its liability in any case covered thereby is to be judged and determined by and from the stipulations both on the face and reverse side of the sheet evidencing the contract in its entirety.
Being of the opinion that the lower court correctly adjudged the case, we hereby affirm the judgment appealed from. Plaintiff is cast for all costs.