AYRES, Judge.
This action was instituted by plaintiff for dismemberment benefits under a group insurance policy issued by defendant. From a judgment rejecting his demands, plaintiff appealed.
The material facts are not in dispute. In 1956, defendant issued to Ford Construction Company, a Tennessee corporation, a group insurance policy covering its supervisory employees. In the payment of premiums on the policy, no contribution was required of the employees. The employer paid the premiums in their entirety.
The terms “employer” and “employee” are specifically defined in the policy. Ford Construction Company was designated as the employer. An “employee” was defined as “a full-time Employee directly employed and compensated for services by the Employer excluding hourly-paid employees.”
At the time of the issuance of the policy, plaintiff was working in Tennessee as a supervisory employee of the Ford Construction Company. He was later transferred to Louisiana where he continued to work for this corporation until March' 16, 1957, when his employment was terminated. *79 Since March 23,1957, plaintiff has been permanently employed by Coastal Contractors, Inc., a Louisiana corporation.
In March, 1961, plaintiff spilled diesel fuel on his legs, after which, on June 2, 1961, he was admitted to a hospital where his left leg was subsequently, on June 13, 1961, amputated.
Numerous defenses were urged to plaintiff’s demands, such as lack of coverage under the policy, inasmuch as plaintiff was not an employee of Ford Construction Company, and, further, that liability did not extend to dismemberment “caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof.”
The principal defense, therefore, relates to plaintiff’s coverage under the policy at the time of the accident. The policy provides, as heretofore observed, that, at the time of the accident, plaintiff must have been a full-time employee of Ford Construction Company, directly employed and compensated by it for his services. The proof is clear, and in fact plaintiff concedes, that he had not been in the employ of Ford Construction Company for a period of approximately four years prior to the accident. He was, during that period of time, and at the time of his accidental injuries, in the employ of Coastal Contractors, Inc.
On the aforesaid issue, plaintiff urges, however, that the separate corporate entities of Ford Construction Company and Coastal Contractors, Inc., be disregarded, apparently contending that the former was merely and simply the alter ego of the other. The proof, however, fails to establish that fact. The corporations were created under the laws of different states; the domiciles and principal places of business were in different states, those of the first in Tennessee and those of the latter in Louisiana. Neither corporation is a subsidiary of the other, nor does either own stock in the other; nor has either done business under any name other than its own. No contention was made nor proof offered that there existed an interlocking directorate or management of the two corporations. Thus, no relationship between the two corporations has been established that would warrant a conclusion that one was merely the alter ego of the other. The separate corporate entities may not, therefore, be disregarded.
Hence, as an employee of Coastal Contractors, Inc., plaintiff cannot be held to be a full-time employee directly employed and compensated for his services by Ford Construction Company so as to constitute him an insured of the defendant under the terms and within the provisions of the insurance policy to which we have referred.
Under these circumstances, the clear and unambiguous provisions of the insurance contract may not be disregarded or avoided. The policy was issued to Ford Construction Company and only covered certain of its employees. For a considerable period of time prior to the accident, plaintiff was not an employee of Ford Construction Company but an employee of Coastal Contractors, Inc.
In sustaining the aforesaid defense, consideration of the second defense would appear unnecessary. However, in passing we may observe that this defense is equally meritorious. -Dr. A. B. Gregory, Jr., plaintiff’s physician and surgeon, testified that the amputation of plaintiff’s leg was caused partly or wholly by disease, that is, by diabetes and arteriosclerosis, either directly or indirectly. Dr. F. E. Polen, a dermatologist, in testifying relative to the irritant properties of diesel fuel, stated that the most to be expected from the spilling of the fuel on a normally healthy person would be irritation of eight to ten days’ duration. When admitted to the hospital, plaintiff was afflicted with sores accompanied by a progressive development of gangrene.
Therefore, for the aforesaid reasons, it can only be concluded that plaintiff’s dismemberment was caused wholly or partly, directly or indirectly, by disease or bodily infirmity and not solely through violent *80 external and accidental means, and, hence, there is no coverage.
The judgment appealed is therefore affirmed at plaintiff-appellant’s cost.
Affirmed.