BARNETTE, Judge.
This is an appeal by plaintiff, Henry P. Burgett, from a judgment denying him recovery as the beneficiary of a policy of *307 insurance issued by defendant, Stuyvesant Life Insurance Company, to Mrs. Cecile L. Burgett, plaintiff’s wife, in the principal sum of $10,000. The specific policy provisions under which plaintiff seeks recovery are as follows:
“PART I SPECIFIED HAZARD
‘Injury’ whenever used in this Certificate means bodily injury to the Insured Person caused by an accident occurring while this Certificate is in force and resulting directly and independently of all other causes in loss covered by this Certificate.
* * * * * *
PART II SCHEDULE OF BENEFITS
If injury to an Insured Person shall result in any of the following losses within one hundred eighty (180) days after the date of the accident, the Company will pay the amount set opposite the loss, based upon the Principal Sum specified in the Schedule of this Certificate.
Life.The Principal Sum ‡ ‡ ‡
In his written reasons for judgment, the trial court judge has presented an excellent discussion of the issues involved in this litigation, as well as his findings of fact and his conclusions of law based on these facts. After a careful review of the evidence and testimony filed in the record, we agree with the following conclusions of the trial court judge and adopt the same as the opinion of this court:
“At the beginning of the trial of this matter, it was stipulated by counsel that the decedent, Mrs. Cecile Marie Burgett, accidentally fell and sustained an injury on October 18, 1965. As a result, she was hospitalized on the same date and remained confined in the hospital, until her death on November 28, 1965. On the date of the accident, there was in full force and effect a certificate of insurance, bearing Certificate No. 585, issued by the defendant, under its group policy to the International Organization of Masters, Mates and Pilots (AFL-CIO) and that the plaintiff was the beneficiary under said certificate.
“Under Part II ‘Schedule of Benefits’ provisions of said policy, the company would pay the sum of $10,000.00, if the injury to the insured would result in the loss of life within 180 days after the date of the accident. The sole issue presented for adjudication is whether the injury sustained by the decedent did directly result in her death, forty days later.
“The injury to Mrs. Burgett, from her fall on October 18,1965, was diagnosed as a simple fracture of the olecranon process, a small bone in the area of the elbow. Conservative treatment was administered, consisting of a local anesthetic, the setting of the fracture and the application of a cast. The healing process was apparently uneventful and some ten days later, the treating physician noted that the patient was free to ambulate. The decedent’s condition, attributable to her elbow injury, was orthopaedically asymptomatic but she was transferred to the gastroenterology section for other treatment.
“Mrs. Burgett died on November 28, 1965, with the death certificate, executed by her treating physician, listing pulmonary embolus as the cause of death. However, the findings of the pathologist, as reflected in the autopsy, are that although the decedent suffered a pulmonary embolus, she survived it and that it should not be considered as one of the primary causes of death. Listed as the predominant or principle causes of death were a pre-existing severe infection of the colon; a long standing kidney infection and kidney stones; and an antecedent severe fatty metamorphosis of the liver (a condition similar to cirrhosis of the liver).
“It should be noted, that in evaluating the medical expert testimony relative to the condition and cause of death of Mrs. *308 Burgett, the Court did place great weight upon the fact that Dr. John Rourke, who testified on behalf of the plaintiff, never had any contact with the decedent during her lifetime, nor was he present at her autopsy. His testimony and opinions are based upon his appreciation of the findings reflected in the medical records. On the other hand, two of the defendant’s medical experts were Mrs. Burgett’s treating physicians, at the time of her death, and the third was the pathologist who made the final anatomical diagnosis.
“It is well recognized that an insurance contract is a voluntary agreement between the parties and may contain such provisions and conditions as are mutually agreed upon, provided they are not in contravention of public policy. Such contracts will be accorded the effect of law between the parties regulating its subject matter.
“Under the terms of the policy issued to the decedent, coverage is extended only to those losses which are directly and independently occasioned by an accident. The specific terminology of this particular contract recites that it will pay a specified sum for death ‘resulting directly and independently of all other causes, from an accident’.
“In order to recover in the instant case, the plaintiff must prove, by a preponderance of evidence, that the injuries received in the accident were the predominant cause of Mrs. Burgett’s death. In other words, plaintiff must establish that the fracture in the area of the elbow was the direct, efficient, and independent cause of death. Our appellate courts have held, in interpreting this provision of an accident policy, that there can be no recovery where death results from an accident, acting together with a preexisting, non-related pathological condition, particularly where the accident in itself would not ordinarily produce death without the intervention of this condition. Thus, it must be determined that the accident would be expected to cause death, with or without, the influence of the existing disease or infirmity, in order for the plaintiff to recover.
“After carefully reviewing all of the medical testimony of the treating physician and the pathologist, the Court is of the opinion that the death of Mrs. Burgett was caused by the pre-existing infection and inflammation of her colon, kidney and liver producing a poisoning which caused her demise.
“The Court is of the further opinion that the plaintiff has failed to establish by a preponderance of evidence that the primary and efficient cause of her death was ‘a pulmonary embolus due to thrombosis of iliac veins’, or that it was directly related and attributable to the injury to her elbow. Such a conclusion is warranted from the evidence of the pathologist that although she experienced a pulmonary embolus, she survived it. Furthermore, the medical record and history of the plaintiff’s treatment and condition while confined to the Ochsner Foundation Hospital does not indicate or sustain that the pulmonary embolus was caused by shock from the trauma of the accident, or the treatment in connection therewith. Nor has the plaintiff established that the embolus was caused by prolonged immobilization because of her injury. On the contrary, the medical record reflects that ten days after the injury she was in an ambulatory condition.
“From the aforegoing it must be concluded that the plaintiff has failed to bear the burden of proof required to establish that the accident to Mrs. Burgett was the direct and independent cause of her death and falls within the coverage afforded under the policy issued by the defendant. For these reasons the plaintiff’s demand is rejected.”
The statements of law by the trial court judge find ample support in the jurisprudence of this state. See Thibodeaux v. Pacific Mutual Life Insurance Co., 237 *309 La. 722, 112 So.2d 423 (1959); Franklin v. Mutual Life Ins. Co. of New York, 216 La. 1062, 45 So.2d 624 (1950); Lipscomb v. Equitable Life Assur. Soc. of United States, 205 La. 738, 18 So.2d 167 (1944); De Blieux v. Travelers Ins. Co., 185 La. 620, 170 So. 14 (1936); Richard v. Southern Farm Bureau Casualty Ins. Co., 128 So.2d 806 (La.App. 3d Cir. 1961); Carnelious v. Louisiana Industrial Life Ins. Co., 18 La.App. 739, 138 So. 533 (Orleans 1931).
For the foregoing reasons the judgment appealed is affirmed at appellant’s cost.
Affirmed.