GULOTTA, Judge.
Plaintiff, Louis McCray, is the insured under a policy of health and accident insurance issued by the defendant, The National Life and Accident Insurance Company, to plaintiff on November 21, 1960. The policy provides that upon receipt of sufficient proof that the insured has suffered the loss by severance of one foot at or above the ankle, and has survived such loss for at least 30 days, total and permanent disability shall be deemed to exist and the insurer, upon surrender of the policy, will pay the sum of $1,000 plus a paid up life insurance policy for the same amount to the insured, subject to the policy provisions. The policy further provides that benefits under this provision shall be allowed only if the loss is caused solely by disease or injuries contracted or sustained after the date of issue. This action is brought by Louis McCray to recover benefits under said policy.
The facts reveal that on August 27, 1965, plaintiff Louis McCray, was injured at work when hot steam water sprayed from a winch, striking his toe on his right foot. Three days after the injury, plaintiff went to the office of Drs. Houston, Roy, Faust & Ewin, and remained under their treatment for approximately 10 months. In July, 1966, Dr. Ewin referred plaintiff to Dr. Russell C. Grunsten, for further treatment. There had been incidents of blistering and attempts at skin grafts upon the injured toe of plaintiff prior to the time he was referred to Dr. Grunsten. On July 15, 1966, plaintiff’s large toe which had been injured had to be amputated. Subsequent to this amputation of the large toe, some healing took place, but the healing proved to be incomplete. On September 2, 1966, a transmetatorsal amputation on plaintiff’s right foot was performed. The purpose of this latter amputation was to control infection which had set in the right foot of Mr. McCray. Finally on November 11, 1966, a below the knee amputation on plaintiff’s right leg was performed at a level four inches below the joint line.
Plaintiff, Louis McCray, made amicable demand on the defendant, National Life and Accident Insurance Company, to collect on his policy, but his claim was denied. On April 24, 1967, plaintiff filed suit alleging that as a result of the accident incurred on August 27, 1965, that plaintiff had lost part of his right leg and was entitled to recovery under the policy. Defendant answered denying the accident and loss of plaintiff and pleaded a special defense that if plaintiff did suffer the loss of part of his leg, it was due to a pre-existing condition of diabetes,' and thus, the loss was not covered by the policy in question.
The trial judge rendered a judgment in favor of plaintiff, Louis McCray. From that judgment, defendant, The National Life and Accident Insurance Company has appealed.
The issue for our determination is whether the amputation to the foot and leg of the plaintiff-appellee was the ultimate result of the injury received by plaintiff of whether the amputation was caused by a pre-existing diabetic condition.
The record reflects that as a result of the original burn plaintiff sustained blisters on the great toe and the next two toes of the right foot. The second and third toes became healed without problems; however, skin loss developed over the big *344 toe. Skin grafts from plaintiff’s calf area to the toe were required but despite a temporary superficial healing, the grafts did not effect a complete healing and the injured toe area continued to drain. As a result of the failure to heal in the great toe, the small toes also later became infected with diabetic gangrene. The spread of this gangrene was the ultimate reason for the final amputation.
The medical evidence, particularly the tests of Dr. Russell C. Grunsten, reflects that the gangrene was itself the effect of a failure of the skin grafts to heal successfully which caused a subsequent infection manifesting itself in the form of diabetic gangrene. Were it not for the initial burn, the skin grafts would have never been necessary in the first place and thus the resultant drainage and infection which stemmed therefrom would never have come into being. This court cannot accept defendant’s argument that it was plaintiff’s diabetic condition which was the efficient and predominant cause of the amputation. Clearly the burn and the subsequent amputation fall into a continuous chain of events whereby the burn to plaintiff’s toe is directly and causally linked to the amputation of his leg without any intervening cause breaking that chain. Therefore, on its face, the facts illustrate that the predominant and thus sole cause of plaintiff’s amputation was the injury he suffered to his toe.
In the case of Carnelious v. Louisiana Industrial Life Ins. Co., 18 La.App. 739, 138 So. 533 (Orleans 1931) at issue was an accident policy where the accident had to be the “sole and independent cause of the disability” to warrant recovery. The court’s discussion of the clause is applicable to the clause at issue in the case at bar and illustrates the basis for our conclusions :
“ * * * Our understanding of the meaning of this clause, as interpreted by the courts generally, is that it suffices if the cause of injury or death be the efficient or predominant cause. The phrase, ‘resulting directly, independently and exclusively in death,’ refers to the efficient, or, as some courts speak of it, the predominant cause of death at the time it occurs. Illinois Commercial Men’s Ass’n v. Parks (C.C.A.) 179 F. 794.
* * * * * *
“In the case of Fetter v. Fid. & Cas. Co., 174 Mo. 256, 73 S.W. 592, 595, 61 L.R.A. 459, 97 Am.St.Rep. 560, the injury complained of was a rupture of the right kidney, the lower part of which was found to be cancerous. In disposing of the contention of the defendant that the rupture was not the sole cause of the death of the insured, the court said:
“ ‘The contention of the defendant is that the accident would not have resulted in the rupture if the cancer had not been there. * * *
“ ‘On this testimony the defendant says that the death was not the result of the accident “independent of all other causes.”
“ ‘If we should give to those qualifying words of the policy the meaning that is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence.
‡ í{{ í}í jf:
“In Driskell v. United States Health & Accident Ins. Co., 117 Mo.App. 362, 93 S.W. 880, 882, the court said:
“ ‘We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of the result, and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances.
“ ‘ * * * If, under the peculiar * * * condition of health of an individual upon whom it is inflicted, such in *345 jury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regared as the sole and proximate cause of death.
“ ‘The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause.
“ ‘In such case, disease and low vitality do not rise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.’
“In Fid. & Cas. Co. v. Meyer, 106 Ark. 91, 152 S.W. 995, 997, 44 L.R.A., (N.S.) 493, it was held:
“ ‘If the injury, by aggravating the disease, accelerated the death of the assured, then it resulted “directly, independently and exclusively of all other causes.”
“ ‘In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition.’ ”
A more recent case, Thibodeaux v. Pacific Mutual Life Insurance Company, 237 La. 722, 112 So.2d 423 (1959) relies heavily on that part of the opinion in the Carne-lious case, supra, quoted above. In applying Carnelious, supra, this court is demonstrating that its holding and reasoning is sound.
Based on the foregoing reasons, this Court finds that the plaintiff has established by a preponderance of evidence that the amputation resulted directly from and was attributable to the injury to the toe. We find that the evidence shows that the chain of amputations subsequent to the initial burn and leading to the final amputation below the knee on plaintiff’s leg were causally and directly related to the burn to plaintiff’s toe. Were it not for the accident and toe injury to plaintiff, we do not believe that plaintiff’s diabetic condition alone would have actively produced toe infections which never completely healed and subsequently spread elsewhere to plaintiff’s leg. The accidental burn was certainly the predominant factor in bringing about the amputation. It is our opinion that the injury and not the disease was the sine qua non of plaintiff’s loss of his right leg. The fact that plaintiff was suffering from diabetes does not presuppose that the loss of a limb necessarily would have resulted. Many diabetics live healthy, normal lives following prescribed diets and use of insulin. We can determine no basis for finding in accordance with defendant’s contention that plaintiff would have lost his right leg anyway — in absence of the injury to his toe.
Although we do not adhere to the trial judge’s finding that the clause in the policy at issue is ambiguous, we agree with his conclusion that the loss of the leg was caused by the injury. We find the plaintiff totally and permanently disabled and entitled to recovery under the policy in question.
For the foregoing reasons, the judgment of the'trial court is affirmed at appellant’s cost.
Affirmed.