LOTTINGER, Judge.
The petitioner, Gerhart Moore, is suing the defendant, The Prudential Ins. Co., on a policy insuring against accidental loss of limb. The Lower Court rendered a summary judgment in favor of the defendant and the petitioner has taken this appeal.
The record discloses that the petitioner was a teacher at the Southeastern Louisiana College and, as such, he was covered by a group policy issued by Prudential Insurance Co. which provides “ . that if the Employee while insured under the Policy, should suffer the loss of life, sight or limb as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means . . . ” ben-. efits would be recoverable under the said policy. The policy, by its express provision, did not cover any loss resulting from or caused “ . . . directly or indirect *457 ly, by . disease or bodily . infirmity, or medical or surgical treatment . or bacterial infection”.
While so employed and while the policy of insurance was in full force and effect, petitioner fractured his right femur on July 19, 1969, when he slipped and fell on his kitchen floor, and his right leg was amputated above the knee some 16 days later. Accordingly, the petitioner filed suit for benefits under the said policy of insurance.
Answer was filed by the defendant wherein the claim was denied because of the above quoted clauses of the insurance policy and asserting that the amputation of petitioner’s leg resulted from a disease, bodily infirmity or bacterial infection and was, therefore, not covered by the policy. Consequently, the defendant filed a motion for summary judgment based upon the pleadings, the certificate of insurance, the policy of insurance, the depositions of petitioner as well as that of Dr. F. C. Mc-Mains, the treating physician, based upon the fact that there was no genuine issue as to the material facts insofar as petitioner’s demand against the defendant was concerned. Accordingly, in accordance with the provisions of Articles 966 and 967 of the Louisiana Code of Civil Procedure, the Articles dealing with the rendition of summary judgment, the defendant prayed that the suit be dismissed.
Article 967 provides in part as follows:
“When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.”
The evidence discloses that the petitioner had sustained a fracture in the same area during about the year 1954 and another about in the year 1962. Because of the presence of osteomyelitis in his right leg, both previous fractures required extensive treatment, including bone grafts, internal fixation and irrigation, over a long period of time, and plaintiff’s leg was left in a weakened and shrunken condition described by Dr. McMains, his treating physician, as a bodily infirmity. The pertinent portions of Dr. McMains’ testimony is as follows:
“It had taken us — this man had really gone from 1952 to the period of 1966 with recurrent episodes of drainage of osteomyletis, bone grafts, operations and things of this nature and now he was back to the same point that he was originally. And after a prolonged discussion with him and considering the fact that he would — this leg was short, decision was made to amputate this extremity rather than • undertake further heroic measures such as further bone grafting, internal fixation and things of this nature which we felt would undoubtedly flare up his osteomyletis again if we did. And in July of 1969, he had a — what we call above-knee amputation on this side.”
Dr. McMains described osteomyelitis as an infection of the bone. He testified that once you have the disease, it is always there and when you add trauma to it whether from a fall or from an operation, or other adverse conditions, the disease will flare up. Although Dr. McMains testified that he would not have amputated this man’s leg except for the injury he says it was an amputation of choice which meant that the patient either had a choice of amputation, which the doctor testified was the best thing for him, or if the patient wanted to try to save the leg, that he could go through this same program that they had attempted for four years before and see if the limb could be saved. The doctor testified that he didn’t promise him that he could save the leg even by going through the bone graft, internal fixation, irrigation, etc. The doctor said “I frankly thought amputation was the better thing for him”.
*458 The doctor then went on to testify as follows:
“Q. Now, I take it that amputation is not the usual treatment for a fractured limb.
A. No, sir.
Q. You said if it had not been for the fracture at this particular time there would have not been any necessity for the amputation when it was performed; if it had not been for the infirmity or the condition of his leg at the time of the fracture there would have been no need for the amputation; is that a fair statement ?
A. If I understand you — if I may phrase it a little differently, if he had fractured his opposite leg I would not have for a moment considered an amputation, which a normal extremity.
Q. Well, I guess that means that it was because of the condition of the fractured leg prior to the fracture that was at least indirectly responsible for the amputation.
A. Yes, sir.”
The doctor then went on to explain that by virtue of the amputation, the patient became ambulatory much sooner than he would have been had he followed the procedure followed at the time of the previous fractures.
Now, we are concerned with a policy of insurance against loss of limb directly resulting from accidental injury and independently of all other causes. A loss, therefore, resulting wholly or partly, directly or indirectly, from disease or from bodily infirmity is not included in the coverage.
The jurisprudence is well settled to the effect that the burden of proof in an action on an insurance contract is on the claimant to establish every fact or issue which is essential to his right of recovery including the fact that his claim is covered by the provisions of the policy in the policy coverage. Boyd v. White, La.App., 123 So.2d 835; Macaluso v. Watson, La.App., 188 So.2d 178; King Fin. Co. of La. v. Fireman’s Fund Insurance Co., 247 La. 133, 170 So.2d 111.
An insurance policy is a contract between the parties and they are bound by its terms as written. Civil Code Articles 1901, 1945 and 1946; Gordon v. Unity Life Ins. Co., 215 La. 25, 39 So.2d 812; Oil Well Supply Co. v. N. Y. Life Ins. Co., 214 La. 772, 38 So.2d 777; Harmon v. Lumbermens Mutual & Casualty Co., 247 La. 263, 170 So.2d 646; Rogillio v. Cazedessus, 241 La. 186, 127 So.2d 734; Monteleone v. American Employers’ Ins. Co., 239 La. 773, 120 So.2d 70; Muse v. Metropolitan Life Ins. Co, 193 La. 605, 192 So. 72; Graves v. Traders & General Ins. Co., 252 La. 709, 214 So.2d 116; Theye Y Ajuria v. Pan American Life Ins. Co., 245 La. 755, 161 So.2d 70; Taylor v. State Farm Mutual Automobile Ins. Co., 248 La. 246, 178 So.2d 238.
Burgett v. Stuyvesant Life Ins. Co., La.App, 236 So.2d 306; Moss v. Metropolitan Life Insurance Co., La.App., 155 So.2d 78; Jones v. Washington Nat. Ins. Co., La.App., 2 So.2d 696; Frerichs v. London & Lancashire Indemnity Co., 169 La. 182, 124 So. 821; and Kirkwood v. London & Lancashire Indemnity Co., 14 La.App. 438, 131 So. 703, involved policies insuring against loss caused by bodily injuries effected directly and independently of all other causes through accidental means, and all denied recovery because the loss insured against resulted directly or indirectly from disease or bodily infirmity.
In stating the rule of interpretation of the applicable provisions of the policy, the Court in the Burgett case said:
“ . . . Our appellate courts have held, in interpreting this provision of an accident policy, that there can be no recovery where death results from an acci *459 dent, acting together with a pre-existing, non-related pathological condition, particularly where the accident in itself would not ordinarily produce death without the intervention of this condition. Thus, it must be determined that the accident would be expected to cause death, with or without, the influence of the existing disease of infirmity, in order for the plaintiff to recover.”
In the Moss case, the plaintiff spilled diesel fuel on his legs, and subsequently had his left leg amputated because of a progressive development of gangrene. In denying coverage, the Court said:
“ . . . plaintiff’s physician and surgeon, testified that the amputation of plaintiff’s leg was caused partly or wholly by disease, that is, by diabetes and arteriosclerosis, either directly or indirectly. Dr. F. E. Polen, a dermatologist, in testifying relative to the irritant properties of diesel fuel, stated that the most to be expected from the spilling of the fuel on a normally healthy person would be irritation of eight to ten days’ duration. When admitted to the hospital, plaintiff was afflicted with sores accompanied by a progressive development of gangrene.
Therefore, for the aforesaid reasons, it can only be concluded that plaintiff’s dismemberment was caused wholly or partly, directly or indirectly, by disease or bodily infirmity and not solely through violent external and accidental means, and, hence, there is no coverage.”
In the Jones case, plaintiff received an accidental lick on his legs which aggravated a pre-existing aneurysm of syphilitic origin. This necessitated a minor operation from which gangrene resulted, making it imperative to prevent death to remove part of the foot. In that case, the Court said:
“ . . . The lick within itself would not have produced serious consequences. It would probably not have required medical attention. The swelling which followed the lick, under the testimony bearing thereon, arose not so much from the force of the lick, but from the fact that it fell upon that part of the leg’s surface under which rested the aneurysm. Had the leg been in a healthy condition the swelling would not have attracted attention.
The accident which befell plaintiff was not the efficient or predominate cause of the disability which followed. It set in motion a chain of causation resulting in the disability, but this is not sufficient, under the terms of the policy, to render defendant liable. .
Defendant simply agreed to make certain benefit payments to plaintiff if he should be disabled as a result of an accident, such as is described in the policy, provided such disability did not result ‘wholly or in part, directly or indirectly’ from venereal disease...."
In the Kirkwood and Frerichs cases, claims were being asserted under the accidental death benefit provisions of the policies. In each case, it was held that:
“ . . . The company, therefore, is not liable in this case unless the bodily injury which caused death was effected directly by accidental means, and independently of the arteriosclerosis which the insured was afflicted with. The bodily injury which caused the death was not the contusion on the side of the head of the insured, but the rupture of the artery, and consequent cerebral hemorrhage; and it can hardly be argued that the injury was effected directly and independently of all other causes by accidental means . . . ”
In the Moss and Jones cases, amputation was required because of the development of gangrene following the accidental injury. In the instant case, however, amputation was not required because of the fracture. The most that can be said is that the fracture was the cause of a choice of treatment being made at that time. *460 Amputation, however, was chosen not because of the fracture but because of the condition of the leg. But even assuming that amputation was required, it could hardly be said that it resulted independently of the bodily infirmity.
The fracture sustained by petitioner in this case did not awaken a dormant condition. Petitioner had this weakened and shrunken leg prior to the accident. The evidence clearly shows that the amputation was not performed because of the fracture but because of the diseased condition of the leg which pre-existed the accident. As there was no genuine issue as to the material facts involved in this proceeding, the motion for summary judgment presently raised the question as to whether or not, under the facts of the case, the defendant is entitled to summary judgment. We concur with the Lower Court in its finding for the reasons hereinabove assigned, there will be judgment herein affirming the decision of the Lower Court. All costs of this appeal to be paid for by petitioner.
Judgment affirmed.