278 So.2d 481 (1973)
Gerhart MOORE
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA.
No. 52685.
Supreme Court of Louisiana.
June 11, 1973.
As Modified on Denial of Rehearing August 20, 1973.
*482 Hebert & Moss, Andre C. Broussard, P. Raymond Lamonica, Baton Rouge, for plaintiff-applicant.
Watson, Blanche, Wilson & Posner, Charles W. Wilson, Jr., Baton Rouge, for defendant-respondent.
SUMMERS, Justice.
Gerhart Moore filed this suit to recover from The Prudential Insurance Company of America the sum of $4,500, with interest, penalties, attorneys' fees and cost. He claimed the amount to be due him as an insured under a group accidental death and dismemberment policy.
By the terms of the policy Moore was insured as a faculty member of Southeastern Louisiana College against "loss of life, sight or limb as a result, directly and independently of all other causes, of bodily injuries effected solely through external, violent and accidental means ...." The policy's limitations clause excluded coverage for any loss resulting from or caused "directly or indirectly, by ... disease or bodily ... infirmity, or medical or surgical treatment thereof... or bacterial infection."
Moore was a geologist. In December 1954 he sustained a fracture of the upper femur of the right leg in an automobile accident. The fracture did not heal for five years despite repeated surgical procedures and heroic treatment. During this period of treatment and convalescence he was required to change his occupation to teaching, because teaching offered a sedentary regime better suited to his impaired physical condition. The fracture finally healed.
Then in 1962 Moore slipped on an onion during a school fire drill and again fractured the upper femur of his right leg. Surgery was performed again. For the second time Moore endured intensive treatment and a lengthy convalescence, this time from October 1962 to December 1967. As a combined result of both fractures, Moore's right leg remained five inches shorter than the left.
Finally, in July 1969, while defrosting his refrigerator at home, he slipped on a wet floor, twisted his right, built-up shoe, fell and refractured the upper femur of his right leg for the third time at the site of the previous fractures. Upon advice of his doctor, Dr. F. C. McMains, the decision was made to amputate the injured leg above the knee. This was done shortly after the injury.
Dr. McMains is an orthopedic surgeon. He performed the surgery and treated Moore for the last two fractures. He was of the opinion that Moore developed osteomyelitis, a bone infection, as a result of the first fracture. After convalescence, however, this infection became quiescent. It was again evident after the second fracture and contributed to the prolonged treatment required to bring about union of the fracture. Thereafter, it again became quiescent.
According to Dr. McMains, once this type infection becomes dormant, some people go the rest of their lives without a flare-up. He had observed cases where no flare-up had occurred for forty years. However, in his opinion, trauma would more likely activate such a quiescent infection.
The decision was made to amputate the leg rather than to undertake further heroic measures such as bone grafting, internal fixation and related procedures. It was felt another attempt to effect union of this fracture would undoubtedly bring about a flare-up of the osteomyelitis. Moreover, amputation would no doubt shorten the period required for Moore's recovery and enable *483 him to return to teaching much sooner than would be the case if the decision had been to attempt union of the fracture.
In Dr. McMain's opinion the amputation would not have been undertaken except for the third injury. Amputation was indicated after the third fracture, in his opinion, to avoid a flare-up of the osteomyelitis and the prospect of a third lengthy convalescence with little assurance that amputation could eventually be avoided. Considering all factors, he felt amputation was best for the patient. As it turned out, in two months after the amputation Moore was ambulatory.
The facts as recited appear from the pleadings, the certificate of insurance, the copy of the policy of insurance and the depositions of Dr. McMains and Moore. On this basis, the insurer Prudential moved for summary judgment alleging there was no genuine issue of material fact and plaintiff's demand against it should be rejected as a matter of law. The trial court granted the motion and dismissed plaintiff's suit. On appeal to the First Circuit the judgment was affirmed. La.App., 263 So.2d 456. Certiorari was granted on plaintiff's application. 262 La. 1103, 266 So.2d 424.
The effect of a pre-existing physical condition on the right of recovery under an accident policy where the contest by the insurer is on the ground that the insured was, at the time of the accident, already afflicted with a disease or infirmity has often been the subject of litigation in the courts.
It is generally agreed that the insurer is liable if an accident is the proximate cause of the death or disability. The troublesome question arises where the insured was afflicted with a pre-existing disease at the time of the accident. 84 A.L.R.2d 184.
As a general rule, it has been stated that if there is a pre-existing disorder or illness at the time an injury is received, recovery may still be had if the injury is severe enough to have caused considerable damage and if the disease was not the proximate cause or principal cause of the disability. 1A Appleman, Insurance Law and Practice, § 403 (rev. ed. 1941).
In Thibodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423 (1959), where the injury was found to be caused by accidental means and this occurrence awakened a pre-existing congenital condition or infirmity, recovery was granted. There we approved this statement of the law:
We think that, if the accident is a proximate cause of the death (or disability) and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death (or dismemberment) after being so precipitated by the accident, it (the disease) is not a proximate cause of the death (or dismemberment) nor a contributing cause within the meaning of the terms of the policy. (parenthesis added).
We reaffirm the rule of law applied in the Thibodeaux Case, and, find it applicable to the facts at bar. Here the disease of osteomyelitis had become dormant. In Dr. McMains' opinion it may never have flared up again in plaintiff's lifetime, except for the probability that a flare-up would be produced by the third fracture. This probability that the infection would flare up presented such a disheartening prospect of pain and suffering to the patient if another union were attempted, the doctor decided on the amputation. These circumstances, in our view, make the fracture, not the dormant osteomyelitis, the proximate cause of the amputation. The accident was the prime moving cause.
This is a case where the disease was a latent one, which might never have caused loss without the occurrence of the accident. Under these circumstances the accident is the predominant, moving, proximate cause and the requirements of the policy that the *484 accident be "effected solely through... accidental means" is satisfied. Cf. Franklin v. Mutual Life Ins. Co. of N. Y., 216 La. 1062, 45 So.2d 624 (1950). See also DeBlieux v. Travelers Ins. Co., 185 La. 620, 170 So. 14 (1936); McCray v. National Life and Accident Insurance Co., 244 So.2d 342 (La.App.1971); Carnelious v. Louisiana Industrial Life Insurance Co., 18 La.App. 739, 138 So. 533 (1931).
For the reasons assigned, the judgments of the trial court and Court of Appeal sustaining the motion for summary judgment are reversed and set aside, and this case is remanded to the trial court for further proceedings.