O’NIELL, C.' J.
 

 This is a suit on an- accident policy of insurance for $15,000, for indemnity for loss of life. The plaintiff is the widow of the insured, and beneficiary named in the policy. The insurance was only — as stipulated in the policy — “against loss caused by
 
 bodily injuries
 
 effected directly and independently of all other causes through accidental means.” It is alleged in the plaintiff’s petition that the death of the insured was-caused by a bodily injury effected by his accidentally striking his head against a post. The insurance company, in its answer to the suit, denies that the death of the insured was “caused by bodily injuries effected directly and independently of all other causes through accidental means,” and avers that the death was caused by disease.
 

 The case was tried first by a jury, who rendered a verdict for the plaintiff, three of the twelve jurors dissenting. On motion of the defendant, the judge granted a new trial. By agreement of the parties, the case was then submitted to the judge for decision, and he decided in favor of the defendant. The judge rendered an opinion in writing, in which he explains that he was convinced by the evidence that the death of the insured was caused by cerebral hemorrhage, resulting from arteriosclerosis, and that the hemorrhage was not even superinduced by an injury effected by accidental means. In fact, the judge concluded from the evidence that the insured did not first strike his head against a post, on the occasion when he was stricken with apoplexy, from which he died. The plaintiff has appealed from the decision.
 

 There were three witnesses to the occurrence when the insured was stricken with the illness or injury which caused his death, and which, the witnesses believed was an injury caused by his striking his head against a post. The three witnesses were the wife and a daughter of the insured and a Mrs. Yolker, a friend of the family. Mrs. Volker did not testify at the trial, because she was absent from the state, having gone to Cambridge, Mass., about a year after the suit was filed and about six weeks before it was.tried. It appears, however, that Mrs. Volker signed the proof of death, which was furnished to the insurance company, in which she corroborated the statements of the widow and daughter of the insured. He was enjoying recreation, which he indulged in weekly, at a fishing camp on Lake Pontchartrain, and was engaged in catching soft-shell crabs, with an ordinary dip net, at the time of the fatal stroke. He was wading in the water, knee deep, under the camp, which was built upon posts nine feet high. His wife and daughter were watching his movements, the wife being in bathing with Mrs. Volker, about 20 feet away, and the daughter being on a wharf or approach extending from the shore to the camp. The wife and daughter testified that when Mr. Frerichs was in the act of scooping up a crab with his net, he struck the side of his head against a post that was behind and to the right of him, and immediately clung to the post with both arms, to avoid falling. His wife and Mrs. Volker rushed to his assistance, and his daughter called to some men at a neighboring camp, who came and helped Mr. Frerichs to climb the steps and enter the
 
 *185
 
 camp. He was only semiconscious, and complained that Ms head hurt him terribly. There was a slight contusion, or bruise, consisting of a red spot about two square inches in area, on the right side of his head, above the ear and forward of the center of the ear. An ambulance was sent for and conveyed him to his home, where he remained five days, confined to his bed and in a- stupor; his left arm and leg being paralyzed. The family physician was called in immediately on the arrival of the ambulance at the Frerichs residence, and he diagnosed the case as. one of cerebral hemorrhage. He testified that he observed the red spot on the side of Mr. Frerichs’ head, and described it as “slight evidence” of a contusion, and repeated that it was “evidence of a slight contusion on the right side of the head.” On the fifth day of the illness, Mr. Frerichs was taken to a sanitarium for treatment, and died there five days later, without having regained consciousness. An autopsy was had by the coroner and two. other surgeons, and revealed, beyond all doubt, that the death was caused by a cerebral hemorrhage, resulting from arteriosclerosis. Two other surgeons, who attended Mr. Frerichs during his last illness, besides the family physician, diagnosed the case as one of cerebral hemorrhage; and in fact it is conceded that that was the immediate cause of death. The only question of fact in dispute is whether the cerebral hemorrhage was caused by Mr. Frerichs’ striking his head against a post, or was the result merely of the arteriosclerosis ; for it is also conceded that the insured had arteriosclerosis and high blood pressure.
 

 The attorneys for the appellant concede — as we understand, for there is no doubt about it —that the slight contusion or bruise on the side of Mr. Fterichs’ head was not evidence of a sufficient blow to have caused a cerebral hemorrhage, but ' for the arteriosclerosis which he was already afflicted with. The contention of the attorneys for the appellant is that the traumatic injury, which caused the contusion on the side of the head, superin-duced the cerebral hemorrhage because of the arteriosclerosis, and that the insurance company is therefore liable, according to the terms of the policy, notwithstanding the traumatic injury would not have been sufficient to cause death or disability but for the arteriosclerosis.
 

 The insurance, as we have said, was “against loss [meaning death or disability] caused by bodily injuries effected directly and independently of all other causes through accidental means.” The company, therefore, is not liable in this ease unless the bodily injury which caused death was effected directly by accidental means, and independently of the arteriosclerosis which the insured was afflicted with. The bodily injury which caused the death was not the contusion on the side on the head of the insured, but the rupture of the artery, and consequent cerebral hemorrhage ; and it can hardly be argued that that injury was effected directly
 
 and independently of all other causes
 
 by accidental means. It is not necessary, however, to decide in this case whether the insurance company would be liable for the loss of life if the evidence showed that the fatal result was superin-duced by the effect of the traumatic injury upon the hardened arteries; for we agree with the judge who heard the evidence that it does not show that there was any such traumatic injury as could have caused, or super-induced, the cerebral hemorrhage, which caused the death of the insured. The evidence leaves no doubt that the cerebral hemorrhage was the result merely of the arteriosclerosis. Our deliberate conclusion, from all of the evidence, is that the ladies who saw
 
 *187
 
 the occurrence were mistaken in their belief that the insured struck his head against the posts before he grasped it in his arms to avoid falling. It is not easy to understand how he could have bruised the side of his head, where it was bruised, by striking his head against a post in the rear of him, in the act of lifting an ordinary crab net. Our conclusion, from all 'of the evidence, is that the slight bruise on the side of the head of the insured was caused either by his falling against the post when he was stricken with apoplexy, or by his coming in contact with it when he grasped it in his arms to avoid falling. The evidence is convincing that the cerebral hemorrhage, which caused the death, was the result merely of arteriosclerosis, and not effected by traumatic injury.
 

 The judgment is affirmed.