## BATES v. NEW YORK LIFE INS. CO.
### No. 79.

District Court, E. D. Louisiana.
March 4, 1940.

Ott & Johnson, of Franklinton, La., for plaintiff.

Montgomery & Montgomery, of New Orleans, La., for defendant.

BORAH, District Judge.

Mrs. Mattie Lou Bates, widow of W. Lawrence Bates, brought suit against the New York Life Insurance Company to recover $7,500 under the double indemnity provisions of two policies of life insurance issued by the New York Life Insurance Company upon the life of her husband, W. Lawrence Bates, numbered respectively 6 769 967 in the sum of $2,500 and 9 428 246 in the sum of $5,000. She also included in her suit a demand to recover interest at six per cent as being the statutory penalty under Act No. 17 of 1920 on $7,500, being the face values of the said policies, payment of which was not made until December 22, 1938, although proofs of death were made on January 8, 1938.

Policy No. 6 769 967 provided for the payment of $2,500 upon proof of the death of W. Lawrence Bates, and an additional $2,500 upon proof that the death of the said W. Lawrence Bates occurred or resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death shall have occurred within sixty days after sustaining such injury. Policy No. 9 428 246, issued on the 6th day of April, 1926, provided for the payment of $5,000 upon proof of the death of the insured, and an additional $5,000 upon receipt of due proof that the death of the insured occurred or resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurring within ninety days after such injury.

Both policies further provide that the double indemnity shall not be payable if the insured's death resulted from illness or disease or from any bacterial infection other than bacterial infection occurring in consequences of accidental and external bodily injury; that the Company shall have the right and opportunity to examine the body, and to make an autopsy unless prohibited by law.

The undisputed facts of the case are as follows: That on December 24, 1937, sometime between the hours of 5 and 7 P. M., the insured jumped a counter in his grocery store. This grocery store was operated on the basis of the customers serving themselves. At the front of the store there was a square cash stand, which was enclosed by a rail which was about three feet high and two feet wide, with an enclosure for the cashier to stand of about five feet square. There was a trap door on one side for entering this enclosure. There were several customers waiting to have their goods checked, and instead of going through the trap door, the insured placed his hands on the railing and jumped into the enclosure. He immediately proceeded to check the purchases of the customers. After he had checked the purchases of the customers who were waiting, which was some five or ten minutes, he complained of a pain in his back. However, he continued to work until 10 o'clock, when he went home. He drove his own car home and went to bed. About 6 o'clock next morning he awakened his wife, as he was suffering from a very severe pain from his back through to his stomach. About 9 o'clock in the morning Dr. J. H. Slaughter was called by the family. About 11 o'clock Dr. E. E. Lafferty was called. These physicians recommended an operation, which was performed, Dr. R. R. Ward administering the anaesthesia. When the doctors found that he was suffering from a severe hemorrhage and his condition was so grave, they immediately closed the incision, hoping that nature might come to the rescue. He died on the morning of December 27, 1937 at 1:30.

The Court finds that there is no evidence whatsoever to show that anything unusual, unexpected or unanticipated occurred in the jump which the insured made over the counter.

The evidence shows that the insured was in the habit of jumping the counter and that he did so on this day in the usual and customary manner and that, therefore, the plaintiff did not sustain the burden of proving that the death resulted from accidental means.

The evidence further shows conclusively that such a jump as has been described could not cause the rupture of the abdominal aorta unless it was diseased, and that the doctors who performed the operation are definitely of the opinion that the insured died because of a hemorrhage resulting from a rupture of the abdominal aorta or one of the blood vessels leading to it.

The medical evidence is clearly to the effect that the death of the insured was the

result of a rupture or aneurism of the abdominal aorta and that an aneurism is a diseased condition and that, therefore, the death of the insured was caused directly by disease.

The evidence is conclusive to the effect that an autopsy would have definitely shown the nature of the disease of the abdominal aorta and the extent and would have conclusively shown what caused the insured's death and that, therefore, material evidence would have been produced. The evidence further shows that the Insurance Company did not have knowledge of any claim for accidental death before the insured was buried, but that they asked for an autopsy within a reasonable time thereafter, the request for an autopsy being made on February 7, 1938. The request was refused.

The Court further finds that the evidence shows that the Insurance Company, the defendant, offered to pay the face value of the policies, but that the plaintiff refused to accept this; further, that after suit was filed and after the case was referred to the attorneys for the defendant, an agreement was entered into by which the death claim would be paid, reserving all rights to both parties, including the right of the plaintiff to claim statutory penalty or interest by reason of the non-payment of the death claim. This agreement was reached on the 22nd day of December, 1938. The Court finds that during this period the Company was ready and willing to pay the same without prejudice to the rights of the plaintiff to claim the double indemnity.

The Court finds that the policy provides that the death of the insured must occur directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means.

The Court finds that the law of Louisiana is to the effect that for a recovery to be had, the means which bring about the death must be accidental, that is, that the insured must not voluntarily intend to do the act which leads to his death, it not being sufficient that the result of the act be unexpected; the means must be unexpected. Fredrichs v. London & Lancashire Indemnity Co., 169 La. 182, 124 So. 821; Parker v. Provident Life & Accident Ins. Co., 178 La. 977, 152 So. 583, and Landress v. Phœnix Mutual Life Insurance Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382.

The Court finds that where an insured jumped a counter, intending to jump the counter in the manner that he did, and that nothing unusual and unexpected occurred in the jump itself, the mere fact that death resulted from the jump does not make the means of the death accidental.

The Court finds that this policy provides that the double indemnity is not payable if the death results directly or indirectly from infirmity of mind or body, or from illness or disease. Fredrichs v. London & Lancashire Indemnity Co., 169 La. 182, 124 So. 821, and Kirkwood v. London & Lancashire Indemnity Co. of America, 14 La.App. 438, 131 So. 703.

The Court finds that an aneurism is a disease as a matter of law, and that a death from the rupture of an aneurism of the abdominal aorta is a death which results indirectly from bodily infirmity or disease.

The Court finds that where an autopsy, demanded within a reasonable time, is refused, and the defendant, the insurance company, is able to prove that material evidence would have been disclosed by the autopsy, the failure of the plaintiff to agree to the autopsy is grounds for a judgment for the defendant. Travelers Insurance Company v. Welch, 5 Cir., 82 F.2d 799.

The Court finds that where an insurance company was ready and willing and offered to pay the face value of a policy and the beneficiary refused to accept this offer because she claimed that she was entitled to double indemnity, which the Court finds she was not, there can be no recovery of interest by the said beneficiary.

The Court now directs the Clerk to enter a judgment dismissing plaintiff's suit and awarding costs to the defendant.