BLANCHE, Judge.
This is a suspensive appeal by defendant-insurer from judgment rendered in favor of plaintiff-widow awarding her accidental death benefits as beneficiary under a policy issued by defendant and covering the late Daryl A. Hendry.
The trial judge rendered Written Reasons for Judgment, summarizing the factual situation and his findings of fact, from which we quote approvingly as follows:
“This case involves the interpretation of a policy of accident insurance issued by defendant, John Hancock Mutual Life Insurance Company. Plaintiff’s husband, Daryl A. Hendry, was employed by Clovis Hendry, Inc., a branch member of The Sheet Metal & Air Conditioning Contractors National Association, Inc., and was an insured under a master policy issued by defendant to the Association.
“On March 16, 1968, Mr. Hendry was driving a tractor with bush hog attachment, clearing a neighbor’s land. He suffered a head injury when a tree fell against the back of his head, causing him to fall forward against the steering wheel of the tractor. The doctors who saw him in the emergency room of the Baton Rouge General Hospital testified that they found a basilar skull fracture, a ten inch laceration of the skull and bruises of the right shoulder and front right chest area. He remained in the hospital until the early morning hours of March 20, 1968, at which time he expired.
“The factual issue to be determined is whether the accident caused Mr. Hen-dry’s death or whether Mr. Hendry’s preexisting physical condition caused the death. Mr. Hendry was a diabetic and had been under treatment for that condition for several years, apparently with no difficulty prior to the accident.
“Doctor Robert L. Ward, pathologist at the hospital, found on autopsy that *502 Mr. Hendry died as a result of a massive myocardial infarction involving the right ventricle and posterior wall of the left ventricle secondary to thrombosis of the right main coronary artery. He found a rather large epidural hematoma on the right side of the head, which produced some compression.
“Doctor Ward testified he thought it possible the myocardial infarction happened within about four days of Mr. Hendry’s death.
“Doctor David Wall, a cardiologist, called by the defendant, testified that he could not be absolutely certain when the heart attack occurred, whether before or after the head injury, and also testified he could agree with the opinion of Doctor Douglas Gordon.
“In short, the medical testimony defers, in effect, to the opinion of Doctor Gordon, a specialist in internal medicine, who was thoroughly familiar with decedent’s physical condition. Doctor Gordon testified that in his opinion the blow to decedent’s head, causing unconsciousness and probably shock, resulted in a lowering of blood pressure, putting an additional strain on decedent’s heart. It was Doctor Gordon’s opinion, in other words, that the accident happened first, and the heart attack came after, probably as the result of the accident.
“Other witnesses testified as to decedent’s active physical life up to and including the day of the accident.
“Considering all medical testimony and the lay testimony as to decedent’s activities up until the date of the accident, the Court finds that the accident happened prior to the heart attack.
“The legal issue of coverage arises because of the wording of the defendant’s policy, which provides:
‘For purposes of insurance under this Policy, the following definitions shall apply: * * *
‘(3) the term “injury” shall mean only a bodily injury occurring accidentally and while the insured person is insured under this Policy and resulting, directly and independently of all other causes, in loss covered by this Policy;

‘This Policy does not cover any loss to an Insured Person caused by or resulting from: * * *
‘(2) disease of any kind; * * * ’
* * * * * * “This Court finds, as did the Court of Appeal in the Richard case [Richard v. Southern Farm Bureau Casualty Insurance Company, 128 So.2d 806 (La. App. 3rd Cir. 1961)], that death would not have occurred had not the accident precipitated or contributed to Mr. Hendry’s heart attack. Plaintiff has borne her burden of proof by a preponderance of the evidence, both medical and lay.” (Written Reasons for Judgment, Record, pp. 14 through 17).
Defendant’s appeal essentially centers around two specifications of error: (1) the finding of fact by the trial court that the heart attack suffered by Mr. Hendry occurred after rather than before his being struck by the falling tree; and (2) the holding by the trial court that Mr. Hendry’s death did not result from disease and was “a bodily injury occurring accidentally * * * and resulting directly and independently of all other causes.”
With regard to the first essential specification of error, our review of the record fails to disclose where the trial judge committed manifest error in finding that the head injury antedated the heart attack. Dr. Douglas Gordon, on whose testimony the trial court placed great weight, testified that the heart attack suffered by the late Mr. Hendry resulted from and was attributable to shock (fall in blood pressure). Dr. Gordon did not feel that a heart attack of the severity sustained by Mr. Hendry was a “silent” heart attack *503 which antedated the severe laceration to the head which he sustained as a result of being struck by the falling tree.
The trial judge made a considered finding of fact that the accident and injury sustained by Mr. Hendry antedated the heart attack rather than the contrary, and we cannot say from our review of the record that the trial judge manifestly erred in this regard.
With regard to the second essential specification of error, appellant contends that the judgment of the trial court is erroneous for the reason that the late Mr. Hendry was suffering from arteriosclerosis, which is a disease, and his death was not caused by bodily injury occurring accidentally and resulting “directly and independently of all other causes.” In support of this contention, appellant relies on the following statement contained in Frerichs v. London and Lancashire Indemnity Company of America, 69 La. 182, 124 So. 821, 822 (1929):
“The insurance, as we have said, was ‘against loss [meaning death or disability] caused by bodily injuries effected directly and independently of all other causes through accidental means.’ The company, therefore, is not liable in this case unless the bodily injury which caused death was effected directly by accidental means, and independently of the arteriosclerosis which the insured was afflicted with. The bodily injury which caused the death was not the contusion on the side on the head of the insured, but the rupture of the artery, and consequent cerebral hemorrhage; and it can hardly be argued that that injury was effected directly and independently of all other causes by accidental means. * * *» (Frerichs v. London and Lancashire Indemnity Company of America, 124 So. at 822 — emphasis supplied by the Court).
reading of the Frerichs case indicates, however, that the above-quoted statement was dictum, for the reason that the Supreme Court affirmed the trial judge’s express finding that the insured died from cerebral hemorrhage which was caused solely by his arteriosclerosis, and was not caused by the insured’s alleged striking his head against a post. The opinion clearly indicates that the trial judge concluded that the insured did not first strike his head against the post but instead first sustained the cerebral hemorrhage, and the insured’s death was thus attributable solely to the arteriosclerosis resulting in cerebral hemorrhage, and in no way factually attributable to any accident. This factual distinction has been specifically made in other cases where the language relied on by defendant herein was also relied on by other defendant-insurers.[1] A
Defendant places great weight on the testimony of the late Mr. Hendry’s treating physician, Dr. Douglas Gordon, to- the effect that the head injury itself would not have been enough to cause the insured’s death as such. (Record, p. 91) Dr. Gordon gave his opinion as to the cause of death of the insured in the following manner:
“A I would say, on the basis of everything we know now, he definitely had coronary arteriosclerosis. Now, coronary arteriosclerosis would not interfere with heart function until the blood flow was narrowed enough to produce a decrease in blood supply to the heart muscle which, in most people, causes chest pain and eventually, if a blockage occurs, would cause a myocardial infarction.” (Record, p. 75)1
“Q Now, doctor, you stated before on direct examination that it was your opinion that the accident occurred *504 with a severe laceration to the head which, in all probability, caused a drop in blood pressure and resulting in shock which, in turn, could account for the thrombosis and the myocardial infarction. Now, sir, with that knowledge would you say, sir, that the accident, that is, the severe laceration to the head which resulted in shock and low blood pressure, would be the predominant factor in the series of events that occurred thereafter?
“A Well, I would say that that was the predominant factor that brought on his death from the coronary thrombosis. I think that would be a good statement to make.
“Q In other words, it is more probable * * *
“A If he had not had this accident, he would more than likely have lived an additional week or two or a month or two, or year or two. We don’t know how long he would have lived with that.
“Q May have lived thirty years?
“A Correct.
“Q And you say it’s a good statement to say that the accident with the resultant shock and drop in blood pressure would be the predominant factor that brought about the heart attack and resulted in * * *.
“A That would be my opinion, yes, sir. (Record, pp. 105, 106).
“Q Dr. Gordon, to summarize what you said, am I correct that what you’re saying is that it took both the disease of severe coronary arteriosclerosis and the head injury combining to cause this man’s death and, but for either, he probably would not have died and each was a predominant factor in bringing about his death?
“A I don’t know if I can answer that in those terms. I think certainly if ■ he had not had either, did not have either the head injury or the coronary thrombosis * * *
“Q I mean the arteriosclerosis.
“A If he had not had either the arteriosclerosis or the head injury, he probably would not have died. I think that the head injury would be, to my opinion, would be the precipitating factor in his death by bringing about the coronary thrombosis and the preexistent condition that was there.
“Q Without that * * *.
“A I don’t, I wouldn’t consider the coronary thrombosis, I mean the coronary arteriosclerosis as a precipitating cause of death since it had been there for such a long period of time.
“Q But if * * *
“A Because if you took one factor, pick one particular thing that would have caused his death, I would have to say that it was the accident that caused, probably caused the shock, the clot and the infarction as a consequence.
“Q But, doctor, we can’t really say that one factor caused it because it’s a fact and it’s your opinion that two factors were predominant and combined together and resulted in his death, isn’t that right, sir?
“A Well, certainly both factors were there, but I would think that the precipitating cause, the thing that caused him to end up dying, would have been the head injury itself that in some way influenced the coronary arteriosclerosis, produced the block, produced the myocardial infarction and his death.
“Q But the arteriosclerosis * * *.
“A I don’t think — let me put it this way, I don’t think there was any *505 change in the arteriosclerosis particularly except for the clot. I think if you looked at his heart a week before he died as compared to, say two weeks before he died as compared to the time of his death, the only change you would have seen would have been a development of the clot itself with the attendant changes in the heart muscle.” (Record, pp. 108 through 110).
The proper findings of fact and the preponderance of the evidence in the instant case are essentially analogous to that dealt with by the Third Circuit Court of Appeal in Richard v. Southern Farm Bureau Casualty Insurance Company, 128 So.2d 806 (La.App.3rd Cir. 1961). In the Richard case, as in the instant case the medical evidence indicated that the accident and its emotional upset would not have caused the insured’s death had it not been for the underlying, latent heart condition, but the evidence in the Richard case, as in the instant case, likewise preponderantly indicated that the death would not have occurred at the time it did had not the accident precipitated or contributed to the heart attack. Both the Richard case and the instant case contain virtually identical language in the insuring agreement, and both contain the “disease exclusion” clause. In affirming a judgment oí the trial court in favor of plaintiff-beneficiary, the Third Circuit Court of Appeal in Richard quoted approvingly from various appellate decisions, including Thibodeaux v. Pacific Mutual Life Insurance Company, 237 La. 722, 112 So.2d 423 (1959), and Lipscomb v. Equitable Life Assurance Society of United States, 205 La. 738, 18 So.2d 167 (1944), which decisions are likewise relied on by plaintiff herein.
The applicable legal principles governing the instant case, enunciated and confirmed by the Louisiana Supreme Court in Lipscomb v. Equitable Life Assurance Society of United States, cited supra, and reiterated in Richard v. Southern Farm Bureau Casualty Insurance Company, cited supra, are the' following:
“ ‘ “ ‘ * * * [T]he injury must stand out as a predominant factor in the production of the result [gap], and not that it must have been so virulent in character as necessarily and inevitably to have produced that result, regardless of all other conditions and circumstances.
“ ‘ “ ‘ * * * If, under the peculiar * * * condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death.
“ ‘ “ ‘The fact that the physical infirmity of the victim may he a necessary condition to the result does not deprive the injury of its distinction of the sole producing cause.
“ ‘ “ ‘In such case[,] [disease] and low vitality do not rise to the dignity of [concurring] causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.’ ” ’ ” [Citation omitted.]
* * * * * *
“ ‘ “ ‘If the injury, by aggravating the disease, accelerated the death of the assured, then it resulted “directly, independently and exclusively of all other causes.”
“ ‘ “ ‘In other words, if death would not have occurred when it did but for the injury resulting from the accident, it was the direct, independent, and exclusive cause of death at that time, even though the death was hastened by the diseased condition.’ ” ’ ” (Lipscomb v. Equitable Life Assurance Society of United States, 18 So.2d at 172 — emphasis added)
Applying these principles to the instant case, it is clear that even though the *506 insured might not have died from the trauma received in the accident by itself, nevertheless, the trauma precipitated the preexisting but asymptomatic arteri-osclerotic condition, thus making the trauma the proximate cause of the death at the time of its occurrence.
The evidence shows that the insured was leading a normal, active life up to the time of the accident in question and was not “suffering” as such from any diseased condition in that the arteriosclerosis was asymptomatic up until the occurrence of the accident. But for the accident and resulting trauma, the medical evidence shows that the insured could very probably still be alive today. Under these circumstances, and considering the evidence and the law applicable to the instant case, the trial court correctly concluded that plaintiff had borne the burden of proving her claim.
The judgment appealed from is affirmed, with all costs of this appeal assessed to defendant.
Affirmed.

. See, for example, Lipscomb v. Equitable Life Assurance Society of United States, 205 La. 738, 18 So.2d 167, 172 (1944), and Richard v. Southern Farm Bureau Casualty Insurance Company, 128 So.2d 806, 809 (La.App.3rd Cir. 1961).